**H.H.O. COMPANY**

v.

**The UNITED STATES.**

**Nos. 113–83C, 201–86C.**

United States Claims Court.

April 9, 1987.

See also 7 Cl.Ct. 703.

Charles C. Flower, Yakima, Wash., of record. Flower & Andreotti and J. William Bennett, of counsel, for plaintiff.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, of record, for defendant.

## MEMORANDUM OPINION

LYDON, Judge:

In these direct access consolidated cases, brought under the Contract Disputes Act of 1978, 41 U.S.C. § 609(a) (1982), plaintiff, in complaints filed on March 25, 1986, (Docket No. 201–86C) and March 2, 1983 (Docket No. 113–83C) seeks to recover additional compensation relative to four Forest Service road construction contracts it entered into with the Department of Agriculture. Three of these contracts are the subject matter of the complaint in Docket No. 201–86C. These three contracts are identified as the Hoodoo Way Road No. 51 (Hoodoo contract) (No. 50–04H1–3–9182C); the East Six Mile Opted Timber Sale Roads (East Six Mile Contract) (No. 50–04H1–3–9264C); and the Alligator Opted Timber Sale Roads (Alligator contract) (No. 50–04H1–2–9052C). One of these contracts is the subject matter of the complaint in Docket No. 113–83C. This contract is identified as the Fishloop Opted Timber Sales Roads Project (Fishloop contract) (No. 50–04–HL–0–8010C).

Defendant has moved to dismiss these complaints on various grounds. In its motion, defendant asserts that four of the ten causes of action set forth in the consolidated complaints must be dismissed because plaintiff failed to bring suit within one-year of the challenged contracting officer's final decision; that two of the ten causes of action must be dismissed because they were not submitted to the contracting officer in a timely manner as required by the contract; that three of the ten causes of action must be dismissed because they are no more than a repetition of plaintiff's other barred causes of action; and that one of the ten causes of action must be dismissed because said cause of action had not been submitted to the contracting officer for decision. Plaintiff opposes defendant's motion. Oral argument was waived by the parties.

## FACTS

### A. *The Hoodoo Contract—Count I; First, Second Alternative and Third Alternative Cause of Action*

Plaintiff and the Forest Service entered into the Hoodoo contract on March 15, 1983. The contract involved the reconstruction of the Hoodoo Way Road No. 51 in the Wallowa-Whitman National Forest, Oregon. Plaintiff, for the contract price of $162,531.30, was to provide additional drainage to an existing road, including the installation of culvert pipe, blind drains and cross drains.

During performance of the Hoodoo contract, a number of disputes arose as a result of which plaintiff filed six claims, uncertified, with the contracting officer. These claims were the subject of a final decision by the contracting officer dated October 26, 1983, in which these six claims were denied. These claims are contained in plaintiff's First Cause of Action and are to be found in Parts VI—IX, and XI of the complaint in Docket No. 201–86C.

The first of these six claims is based on the contention that a delay by the Forest Service in the issuance of a Notice to Proceed on all work items forced plaintiff to alter its schedule of operations thereby effectively accelerating its work performance. While a start work order had been issued for April 19, 1983, this order was applicable only to drilling and blasting work because an access road was closed to heavy equipment due to adverse conditions. A total work order to proceed was issued on June 6, 1983. No specific dollar amount was claimed by plaintiff in its submission to the contracting officer. This is the same claim set forth in Part VI, paragraphs 1 and 2 of the complaint in Docket No. 201–86C. The complaint does not assign a specific dollar amount to this claim.

The second of these six claims is based on the excavation for placement of perforated pipe, where rock was encountered which had to be drilled and shot. Plaintiff claimed that a differing site condition was encountered which plaintiff could not discover prior to bidding because the Forest

Service would not allow it to move equipment to the site to dig test holes. Plaintiff sought excess costs from the contracting officer of $18,725.40. This is the same claim set forth in Part VII of the complaint in Docket No. 201–86C although plaintiff has increased the amount of the claim to $23,482.

The third of these six claims consisted of two parts and was based on broad contentions that the specifications, items and quantities governing certain contract work were misleading. In the first part, plaintiff claimed that bid item specifications for blind drains failed to include granular backfill material, filter cloth and six-inch pipe and that a bid item needs to be added to the contract to pay for this material. There was no indication that plaintiff assigned a dollar amount to this claim when submitted to the contracting officer. This particular claim is set forth in Part VIII of the complaint in Docket No. 201–86C and seeks $19,017 as an equitable adjustment. In the second part, plaintiff claimed that he was required by work order C to place more crushed aggregate surfacing rock than called for by the contract. Plaintiff claimed it should be paid for 154 additional cubic yards of rock at a unit price of $10.00 per yard. ($1,540). This particular claim is set forth in Part XI of the complaint in Docket No. 201–86C and seeks $1,931.00.

The fourth of these six claims is based on "troubles" the plaintiff had in finding rock to satisfy the Forest Service. The contract did not designate a rock source. This claim is set forth in Part VI, paragraphs 3 and 4 of the complaint in Docket No. 201–86C. Plaintiff did not request a specific dollar amount from the contracting officer on this claim nor did it set out a specific dollar amount for this claim in its complaint. In its complaint under Part VI, however, plaintiff seeks a combined $178,695 for the First and Fourth of the six claims presented to the contracting officer.

The fifth of these six claims concerned delays in progress payments. It does not appear that plaintiff has asserted any such claim in its complaint under the Hoodoo contract.

The sixth of these six claims was based on the contention that the Forest Service tore up long sections of road and left them in such a condition that caused damage to plaintiff's hauling equipment. There is no indication plaintiff attached a dollar amount to this claim before the contracting officer. This claim is set forth in Part IX of the complaint in Docket No. 201–86C.

On December 8, 1983, the Forest Service terminated the Hoodoo contract for default because the project had not been completed by the extended completion date of October 5, 1983. In this termination decision, plaintiff was advised of his appeal rights, particularly of his right to bring action directly in court within twelve months of the date plaintiff received the decision. There is no allegation, nor evidence, that any reprocurement costs were assessed against plaintiff as a result of this default termination. In its complaint in Docket No. 201–86C, plaintiff challenges the validity of this 1983 default termination in Part XV, paragraph 11, and Parts XVII, XVIII, and XIX (labeled in plaintiff's complaint as a "Third and Partial Alternative cause of action, and as an alternative to Plaintiff's second cause of action * * * ").

In its complaint in Docket No. 201–86C, plaintiff pleads as a "Second and Partial Alternative to its first cause of action," that defendant breached the contract. The grounds for the breach claim are the fact particulars which underscored the claims presented to the contracting officer and denied by his decision of October 26, 1983. (Parts XIII, XIV, XVI and XV, paragraphs 1–9 of the complaint in Docket No. 201–86C.) The allegations of Part V, paragraph 10, "Continued actions throughout the contract by Government officials or interference with relations between Plaintiff and its employees or subcontracts; * * * ", were not presented to the contracting officer for decision as of October 26, 1983. Plaintiff seeks, in its complaint, damages of $266,671 for breach of contract as a second alternative to its first cause of action claim.

On May 29, 1985, plaintiff submitted "claims for adjustment" relative to the

Hoodoo contract, *inter alia,* to the contracting officer as follows:

1. a) Delay in issuing a Notice to proceed;

   b) Denial of timely access to gravel pit;

   c) Refusal to acknowledge inaccuracies in Government tests of crushed rock;

   d) Refusal to allow use of a Forest Service borrow site for plastic fines. Amount of claim 1: $178,695.00

2. Differing site conditions regarding amount of unclassified rock encountered in underdrain trenches: $23,482.00

3. a) Excess quantities of filter cloth, 6" perforated pipe, and granular backfill not included in Schedule of Items, and

   b. Design changes required to blind drains. Amount of claim 3: $19,017.00

4. Damage to Contractor's equipment resulting from operations of Forest Service road maintenance crew: $2,508.00

5. Changes involving excess quantities as well as hand and machine placement of riprap: $24,785.00

6. Increased quantity of aggregate surface material (Grade D) resulting from Work Order C: $1,931.00

7. Alternative Claim for Breach of Contract: $266,671.00.

I certify that the claims summarized above are made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief and that the amount requested of $266,671 accurately reflects the contract adjustment for which I believe the government is liable.

On analysis, it seems clear that claims 1(a), (b), 2, 3(a), 4 and 6, *supra,* were previously presented to and denied by the contracting officer in his prior October 26, 1983 decision. It is less clear whether claims 1(c) and (d), 3(b) and 5 were embraced in some way within the parameters of claims presented to and decided by the contracting officer in his October 26, 1983 decision. It is clear that claim 7 was not presented to the contracting officer for decision as of October 26, 1983.

The contracting officer on July 23, 1985 responded to plaintiff's May 29, 1985 letter, *supra,* as follows:

Claim Items 1(a), 1(b), 2, 3(a), 4, and 6—The Contracting Officer's final decision denying these claim items was issued by letter dated October 26, 1983. These claims were not appealed, are no longer for consideration, and are no longer subject to appeal.

Claim Item 1(c)—Your claim statement indicates the Government tested samples of crushed rock, found it did not meet specification requirements, and shut the crushing operation down. Also, that you had the rock tested by an independent laboratory, and that the rock did meet specification requirements. A total of $178,695.00 is claimed for all of Claim 1 which consists of 4 subitems, but no specific dollar amount is claimed for Subitem 1(c).

You have submitted no evidence or information to support the above statements, or the dollar amount claimed, and we find no support for this claim in the Government's records. While you do not indicate which contract provision this claim is being filed under, we assume it to be the Changes Clause (Clause 3 of the General Provisions, SF–23A). However, this clause requires you to assert any claim for an equitable adjustment under this clause within 30 days after receipt of any order (direction, instruction, interpretation, or determination) which you consider to be a change. You do not indicate when the events allegedly involved in this claim occurred, but it most certainly would have been at least a year and a half ago. Even if there was any substance to the claim, the lack of notice would be prejudicial to the Government at this point in taking mitigating corrective action, determining the facts involved, and determining the costs incurred; therefore, this claim is denied both as to entitlement and quantum.

Claim Item 1(d)—You claim the contract allows you to use borrow sites on Forest Service property, that you needed plastic

fines to meet crushed rock specifications and requested use of a source near your rock pit, and that the Forest Service refused to approve use of any source on Government property. As with Claim Item 1(c), no separate dollar amount is claimed for this subitem, and no justification has been provided for the total amount claimed for the 4 subitems under Claim Item 1.

We agree that you requested use of a borrow source and that your request was denied; however, we do not agree that the contract gave you the right to use sources on Government property. In fact, several contract provisions in the General Provisions, 6300–42, indicate otherwise.

\* \* \* \* \* \*

Based on the above we do not find the claim item 1(d) to be justified as to entitlement or quantum, and it is, therefore, denied.

*Claim 3(b)*—You claim that the contract provided for blind drains to be constructed in a rectangular fashion, but that a Work Order was issued requiring blind drains to be constructed to an irregular shape. No separated dollar amount is claimed for this subitem but a total of $19,017.00 is claimed for both Subitems 3(a) and 3(b). Claim Item 3(a) has previously been denied and is no longer under consideration, and no supporting evidence has been presented for the total amount claimed.

The claim does not identify the Work Order which is alleged to have directed blind drains to be "of an irregular shape with many angles and additional dimensions." The only Work Order we find relating to blind drains is Work Order LL. \* \* \* This claim item also fails under the Changes Clause which requires notice of constructive changes be given within 30 days. Work Order LL was issued on October 23, 1983, over a year and a half ago. Based on the above we find this claim to be unsupported and unjustified. Accordingly, this claim is denied.

Claim Item 5—You claim the contract called for "dumped riprap" but that the COR ordered all riprap to be placed by hand or machine, and that the COR ordered 200 additional yards of riprap to be install-

ed. You request payment for the additional 200 yards at $18.81 per yard ($3.81 per yard more than the bid price) and $43.89 per yard extra for the 200 yards, and the contract quantity of 279 yards for hand and machine placing. The total amount claimed is $24,785.00.

We find two Work Orders dealing with riprap. Work Order KK directed you to place 44.5 cubic yards of extra riprap between station 408+05 and station 409+05. This quantity was paid for at the contract unit price of $15.00 per yard. Work Order DD directed you to place an additional 20 cubic yards of riprap at Work Site X. However, this direction was modified by Change Order 2 which called for 40 cubic yards of select borrow rather than the riprap and you were paid an additional $849.29 (by mutual agreement) for this and other work contained on the Change Order. We find no support for your claim that an additional 200 cubic yards of riprap was required and the only extra riprap ordered has been properly paid for.

We find no evidence that you were directed to hand place or machine place any riprap. Some machine and hand work may have been done but this was not at the COR's direction. You were hauling riprap on a flat bed truck with 12 inch sideboards made of $2 \times 12$ lumber. With heavy loads, the bed of of [sic] the truck could not be raised for dumping without the aid of your front end loader and material was often spilled over the sides with the equipment used. Dumping could not be controlled to provide the proper width and depth of material. This may have resulted in having to manipulate the material with equipment or by hand. However, this was not due to any order by the Government and does not justify a price increased [sic]. Therefore, this claim item 5 is denied.

Claim Item 7—This is an alternative claim to Claim Items 1 through 6 and is based on breach of contract by the Government. You claim the Government breached an implied duty not to hinder the Contractors [sic] performance or increase his costs, an implied duty to do what is necessary to enable the Contractor to perform, and the

duty to act in good faith in the administration of the contract. As a result of the above, you claim to have suffered extra costs of performance in the amount of $250,418.00 plus a loss of profit of $16,253.00. As support for this claim item you list 11 "actions" which were represented to be acts of breach by the Government. These include substantially the same actions on which Claim Items 1 through 6 are based and also your termination for default which you claim was arbitrary, capricious or otherwise improper.

To the extent that Claim Item 7 is based on allegations already considered and denied under Claim Items 1(a), 2, 3(a), 4, and 6 of your termination for default, it is not for consideration by the Contracting Officer or subject to appeal under Claim, [sic] Item 7. To the extent Claim Item 7 is based on allegations other than those cited above, it is denied.

The Contract Disputes Act requires the Contractor to certify (on claims over $50,000.00) that the claim is made in good faith, that the supporting data is accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable. It further provides that if the Contractor is unable to support any part of his claim, and it is determined that such inability is attributable to misrepresentation of fact, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim.

You have certified your claim as required. However, you have submitted no evidence to support entitlement or quantum under any of the claims submitted, and are aware that many of the claims were already considered over a year and a half ago and were denied. To now make claim [sic] again for these same items contradicts your certification of good faith, and belief as to the Government's liability. Your Termination for Default was appealed to the Agriculture Board of Contract Appeals, but was dismissed with prejudice on April 24, 1984, at your request so the matter could be pursued before the U.S. Claim [sic] Court. The Termination for Default, in itself, was the final decision of the Contracting Officer and is not subject to further consideration except by the U.S. Claim's [sic] Court if, in fact, court action was brought within one year after December 31, 1983, the date of your termination.

To the extent that you are unable to support any part of your claim and such inability is attributable to misrepresentation of fact, the Government reserves the right to pursue damages as outlined in the Contract Disputes Act.

Based on the above, we find that Claim Items 1(a), 1(b), 2, 3(a), 4 and 6 are not subject to further consideration by the Contracting Officer and are not appealable to either the board of appeal or the U.S. Claim's [sic] Court.

Claim Items 1(c), 1(d), 3(b), & 5 are hereby denied both as to entitlement and quantum.

To the extent that Claim Item 7 is based on allegations already considered and rejected under Claim Items 1(1) [sic], 1(b), 2, 3(a), 4, and 6, or your termination for default, it is not for consideration by the Contracting Officer or subject to appeal. To the extent that Claim Item 7 is based on allegations other than those citied [sic] above it is denied.

This is the final decision of the Contracting Officer. This decision may be appealed to the Board of Contract Appeals, Room 2912, South Building, U.S. Department of Agriculture, Washington, DC 20013. If you decide to make such an appeal you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within ninety days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken.

The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Board of Contract Appeals you may bring action directly in the U.S. Court of Claims, within twelve months of the date you receive this decision.

Plaintiff filed a complaint in Docket No. 141–84C in this court on March 23, 1984 in which he sought recovery on the Hoodoo contract claims discussed above. This complaint was dismissed without prejudice because plaintiff failed to indicate in said complaint that it had filed these claims with the contracting officer. *See* 5 Cl.Ct. 822 (1984). Plaintiff thereafter obtained the July 23, 1985 determination from the contracting officer and then filed his complaint in Docket No. 201–86C on March 25, 1986, which is now one of the subjects of defendant's motion to dismiss.

B. *The East Six Mile Contract—Count II; Fourth, Fifth Alternative, and Sixth Alternative Cause of Action*

On July 8, 1983, plaintiff and the Forest Service entered into the East Six Mile contract. This contract involved road reconstruction and new road construction in the Colville National Forest, Washington and was in the amount of $294,012.10. The contract was terminated for default on November 9, 1984 by the contracting officer. This decision advised plaintiff that it had failed to prosecute the work with such diligence as to ensure its completion within the allotted contract time. The decision further advised it was a final decision and apprised plaintiff of its appeal rights. Specifically, plaintiff was advised that "[i]n lieu of appealing to the Board of Contract Appeals, [you] may bring an action directly in the U.S. Court of Claims within twelve months of the date you receive this decision."

As a "Sixth and Partial Alternative to Plaintiff's Fourth Cause of Action, and as an alternative to Plaintiff's Fifth Cause of Action" plaintiff challenges the termination of the East Six Mile contract for default, for reasons underscoring its claims set forth under its fifth cause of action, and seeks to have the default converted to a termination for convenience in Parts XXXVI–XXXVIII of the complaint in Docket No. 201–86C.

On May 29, 1985, over six months after the contract was terminated for default, plaintiff submitted some ten (10) claims to the contracting officer (Part XXXII of the complaint in Docket No. 201–86C). Nine of these claims involved a series of individual claims ranging from "Changes" involving "excess quantities and machine placement of riprap on Road 210: $602 [Claim 3]" to "Acceleration of Work Performance: $100,-510 [Claim 1]." These claims were based on the "Changes" or the "Differing Site Conditions" clause of the contract. Eight of the nine claims sought equitable adjustment amounts under $9,000. Only Claim 1 sought an amount over $50,000. The aggregate amount of these nine individual claims was $129,765.48. Plaintiff's tenth claim was an "Alternative Claim of Damages for Breach of Contract" in the amount of $159,166.[1] In support of its breach of contract claim, plaintiff set out the particulars of the nine equitable adjustment claims, mentioned above, plus three additional generalized claims relating to interference by government officials throughout the contract with relations between plaintiff and its employees or subcontractors (Claim 10); withholding of funds due plaintiff which affected its ability to proceed with the contract work (Claim 11); and failure by the contracting officer to exercise discretion, as well as acting in a arbitrary and capricious manner, in terminating the East Six Mile contract for default when the work was substantially complete and plaintiff was given no opportunity to cure any deficiencies (Claim 12).

**1.** In computing its alternative breach of contract claim, plaintiff utilized the $129,765 figure, the total amount claimed in the previously mentioned nine equitable adjustment claims, to which plaintiff added a "loss of profits on the contract in the amount of $29,410 to reach a $159,166 claim figure." It is noted that $129,765 plus $29,410 results in a figure of $159,175. Further, it is to be noted that while plaintiff may be entitled to be made whole for the dam-

ages it suffered, it is not entitled to make a profit from the breach. *Kinzley v. United States,* 228 Ct.Cl. 620, 630, 661 F.2d 187, 193 (1981); *see also Torres v. United States,* 126 Ct.Cl. 76, 79, 112 F.Supp. 363 (1953). Plaintiff is not entitled to recover, in any event, the $29,410 in lost profits since in a suit for breach of contract plaintiff is not entitled to recover profit on the amount of his damages. *Id.*

As its fourth cause of action in Docket No. 201–86C, plaintiff seeks an equitable adjustment for the nine claims which were the subject of its May 29, 1985 claim letter to the contracting officer (Parts XXI—XXXI of the complaint in Docket No. 201–86C).

As its "Fifth and Partial Alternative to its Fourth Cause of Action," plaintiff, in its complaint in Docket No. 201–86C, alleges a breach of contract by the Forest Service setting forth the 12 itemized particulars in the 12 claims plaintiff submitted to the contracting officer on May 29, 1985 under its alternative breach of contract claim.

On August 15, 1985, the contracting officer denied the claims submitted by plaintiff on May 29, 1985. In his decisional letter, the contracting officer stated in pertinent part:

The contract requires, at SF–23A Clause 3, changes that any claim for equitable adjustment must be made within 30 calendar days after receipt of a written change order.

Under Clause 4, Differing Site Conditions, it is stated that "The Contractor shall promptly and before such conditions are disturbed, notify the Contracting Officer in writing ..."

The Notice requirements are explicit. The contract contains no record of your having presented any Notice on any of these claims, at any time. This contract was Terminated for Default on November 9, 1984. A defaulted Contractor does not have a right to present claims after termination except for those items on which he has provided timely Notice, prior to the termination.

No Notice was provided on any of the claims at issue here. Submitting claims 282 [Sic—should be 202 days] calendar days after the date of Default Termination certainly cannot be considered as timely Notice. This action prejudices the Government's right to take any corrective action which it may have deemed necessary at the time, had it been given timely Notice. Therefore, based upon the facts available to me at this time, it is my decision as Contracting Officer that

your claims, numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 (including Alternative Claims for Damages for Breach of Contract. Parts A. (1) (2) and ( ) and B. (1) (2) (3) (4) (5) (6) (7) (8) (9) (10) (11) and (12)) must be denied. This decision is based upon lack of timely Notice and presentation of claims after the date of Default Termination by a defaulted Contractor when he had not provided timely Notice prior to the date of default termination.

Plaintiff was advised that this decision was final and was further advised of its appeal rights and options, i.e., its right to appeal to the Board of Contract Appeals (BCA) within 90 days of the date the decision was received or in lieu of appealing to the BCA, the plaintiff had the option to bring an action directly to the Court of Claims [Claims Court] within 12 months of the date plaintiff received the decision.

Plaintiff takes issue with the contracting officer's position that plaintiff failed to give him appropriate notice of each of its claims as required by the "Changes" and "Differing Site Conditions" clauses of the contract. Plaintiff has appended much documentation to its opposition brief to show that the contracting officer knew, actually or constructively, of the circumstances underscoring each of plaintiff's claims. The court is unable to state whether plaintiff gave the notice required by these clauses. It is a fact question not subject to resolution on the basis of the materials presently before the court.

Plaintiff thereafter appealed a decision to the Department of Agriculture Board of Contract Appeals (BCA), Docketed as 85–512–1. On January 13, 1986, the BCA issued an order dismissing this appeal with prejudice. In its order, the BCA stated:

This appeal relates to Forest Service Contract No. 50–04H1–3–9264C.

A Notice To Show Cause was issued to Appellant on December 19, 1985, directing Appellant to file a Complaint or otherwise show cause why the appeal should not be dismissed within 10 days. The Notice was received by Appellant December 28, 1985 (CRR P 074646507). On January 9, 1986, Appellant returned the

show cause notice to the Board, with a handwritten notation thereon stating "This has been filed in Claims Court Thank You".

Appellant has failed to prosecute its appeal before the Board.

As indicated earlier, the complaint in Docket No. 201–86C was filed in the Claims Court on March 25, 1986. An earlier complaint, Docket No. 141–84C, had been filed by plaintiff in the Claims Court on March 23, 1984, relative to the East Six Mile contract, *inter alia*, but contained no allegations relative to decisions by the contracting officers on the claims alleged in the complaint. The complaint in Docket No. 141–84C was dismissed without prejudice. *See* 5 Cl.Ct. 822 (1984). As a result, plaintiff's notice to the BCA that the claims which were the subject of its BCA appeal had been filed in the Claims Court as of January 1986 lacks support on the basis of materials presently available to the court.

It is noted that plaintiff alleges that the appeal in BCA No. 85–512–1 involved a "blow down" timber damage claim which is unrelated to any claim presented in Docket No. 201–86C.

C. *The Alligator Contract—Count III; Seventh, Eighth Alternative, and Ninth Alternative Cause of Action*

Plaintiff was awarded the Alligator contract on August 30, 1982. The contract was in the amount of $487,707.75 and called for the reconstruction of certain old roads and the construction of new roads in the Colville National Forest, Washington.

On November 3, 1983, plaintiff's Alligator contract was partially terminated for default because of plaintiff's failure to timely complete work on certain roads. Plaintiff was cautioned at the time relative to future contract work and the necessity for timely performance thereof, and was further advised of its appeal rights relative to the partial default termination. The Alligator contract was completely terminated for default by a final decision issued on July 17, 1984. This decision advised plaintiff of its appeal rights and options. The Alligator contract was reprocured and ex-

cess costs of reprocurement of $254,153.14 were incurred. On January 10, 1986, the contracting officer issued a final decision finding that plaintiff owed the government $254,153.14 as reprocurement costs because of its default in the performance of the Alligator contract. This decision advised plaintiff of its appeal rights and its options relative thereto, i.e., appeal to the BCA within 90 days of receipt of said decision or in lieu thereof bring an action in the Court of Claims (Claims Court) within 12 months of receipt of said decisions.

On March 3, 1986, plaintiff sent a handwritten letter to the BCA which read as follows:

Board Contract Appeals,

This is my written notice of c.o. Bill Voss Final Decision stating H.H.O. Inc. Co. owes 254,153.14 for amount of reprocurement costs on contract # 50–04H1–2–9052C Alligator opted T.S.R. I will follow this with a 1 million dollar personal suit against Mr. Voss for going beyond his duties as c.o. for the gov't in his effort to break H.H.O. & stop them from doing Forest Service work. ($254,153.14) This is a absol. waste of the tax payers money. Also this week I will file a claim in Court of Claims for breach of contract & etc., four jobs are involved.

Plaintiff contends this letter from the President, Robert Gier, of the H.H.O. Inc. company was a *pro se* informational letter and should not have been docketed by the BCA as a claim. Further, plaintiff argues, it was sent without the knowledge of plaintiff's counsel. The "purported" appeal to the BCA involves plaintiff's Ninth Cause of Action, the default termination and excess cost reprocurement assessment.

While not clear from the materials at hand, it seems that plaintiff sent the following letter to the BCA on March 25, 1986:

Subject: Robert, Gier H.H.O. Inc. Co. appellant AGBCA # 86–219–1 (complaint)

Appellant claims that the default on contract # 50–04H1–2–9052C was a breach of contract on C.O. William Voss part. The contractor H.H.O. Inc. Co.

was the object of Mr. Voss to get off the job & kept from bidding any more jobs. H.H.O. Inc. claims the default should never of happened & should be changed to the convenience of the gov't. & the 254,153.14 reprocurement cost is theirs. H.H.O. Inc. was forced to work in conditions not fit. Was not given credit for day's lost due to weather was the victim of costly indecision's on Voss's part. H.H.O. Inc. claims that because of actions taken from other job's that they had under Voss's supervision Voss deliberately harrassed [sic] H.H.O. their sub's & employees. H.H.O. Inc. is asking for a hearing by non Forest Service employees & that if results from appeal is found in their favor that Voss be punished to the extent that he handed down to the contractor & the American taxpayer.

Robert Gier H.H.0. Inc. Co. Business Agent.

The above two letter from plaintiff seem to constitute plaintiff's appeal to the BCA regarding the default termination of the Alligator contract and the attendant assessment against plaintiff of excess reprocurement costs. Defendant advises this appeal has been docketed by the BCA, assigned docket No. 86–219–1, and is still pending. Plaintiff admits that it presently has a claim for reprocurement costs assessed against it by defendant in the BCA, AGBCA No. 86–219–1. Plaintiff further admits this claim is also an issue in this case, Docket No. 201–86C.

In its "Ninth And Partial Alternative to the Seventh Cause of Action, and as an alternative to its Eighth Cause of Action" plaintiff, in Parts LIII–LVII of its complaint in Docket No. 201–86C, challenges the default termination of the Alligator contract and the assessment against it of reprocurement costs.

On May 29, 1985, plaintiff submitted eight claims to the contracting officer for determination. These same eight claims constitute plaintiff's Seventh Cause of Action in Docket No. 201–86C and are set forth in Parts XLII–XLIX. The first seven claims sought equitable adjustments based on the "Changes" and "Differing Site Con-

ditions" clauses of the Alligator contract. The claims ranged from "Acceleration Work" ($255,572) to "Rock Placement" ($5,424). Six of these seven equitable adjustment claims were under $50,000. The total amount sought as an equitable adjustment for these seven claims was $358,325. The eighth claim was an alternative claim for breach of contract.

Plaintiff's "Eighth and Partial Alternative to its Seventh Cause of Action" is the breach of contract claim it presented to the contracting officer on May 29, 1985. This alternative cause of action is to be found in Parts LI–LII of the complaint in Docket No. 201–86C. This breach claim embraced the particulars of the seven equitable adjustment claims presented to the contracting officer on May 29, 1985, plus two additional allegations that government officials interfered with relations between plaintiff and his employees or contractors (claim 8) and that the contracting officer failed to exercise discretion and acted in an arbitrary and capricious manner in terminating the Alligator contract for default when said contract was substantially complete and plaintiff was provided with no opportunity to cure any deficiencies in said contract performance (claim 9).

On November 25, 1985, the contracting officer issued his findings and decision denying plaintiff's May 29, 1985 claims. In his denial, the contracting officer relied, *inter alia*, on plaintiff's lack of timely notice to him relative to some of the claims. The "Notice" issue was discussed briefly, *supra*, and the matter is not one for disposition on a motion to dismiss or for summary judgment. Plaintiff was also advised at the same time of its appeal rights and options relative thereto. Plaintiff's complaint in Docket No. 201–86C, as indicated previously, was filed in this court on March 25, 1986.

D. *The Fishloop Contract—Count IV, Tenth And Alternative Cause of Action*

Plaintiff entered into the Fishloop contract with the Forest Service for the construction of roads in the Wenatchee National Forest, Washington in 1980. Claims arising out of the Fishloop contract are

presented in the complaint in Docket No. 201–86C,' Parts LVIII–LX and are also presented in Docket No. 113–83C, which complaint was filed on March 2, 1983. This explains the consolidation of these cases. In Docket No. 201–86C, plaintiff does not allege any action, or inaction, by the contracting officer relative to its claims under the Fishloop contract. In Docket No. 201–86C, plaintiff alleges in broad and generalized language that "[d]efendant's improper, bad faith administration" of the " 'Fishloop' contract" constituted a breach of said contract as well as the deliberate wrongful hindering, delaying and interfering with plaintiff's contract performance. For its Tenth cause of action, plaintiff seeks $860,085.

In Docket No. 113–83C, plaintiff alleges the Forest Service breached the Fishloop contract by improper contract changes, delays and suspension of work. It seeks an equitable adjustment of some $355,000, plus interest, plus other relief as a result of the contract breach. Plaintiff sets forth, in Part VI of the complaint in Docket No. 113–83C, nine (9) specific claims. No dollar amount is assigned to any single claim. There is no allegation in the complaint in Docket No. 113–83C that the claims set forth therein were submitted to or decided by a contracting officer.[2]

While defendant, in its July 14, 1986 Motion to Dismiss, indicates that the Fishloop contract was terminated for default, there is no indication of, or claim related to, this default termination in plaintiff's complaint in Docket No. 113–83C.

### Discussion

#### A. The Contract Disputes Act Twelve Month Limitation Period

While defendant has moved to dismiss plaintiff's complaints in these cases, it has appended materials in support thereof which dictate that said motion be treated, where appropriate, as a motion for summary judgment. The two complaints contain a total of ten causes of action. In some cases, a cause of action contains as many as nine or more separate claims. Defendant's motion is directed at the causes of action. Because of the manner in which plaintiff has pleaded its claims, difficulty has been encountered in segregating some claims for consideration under the various defenses asserted by the government.

Defendant in its moving brief claimed that plaintiff's First, Third, Sixth and Ninth Causes of Action were barred by the limitations period specified in the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(3) (1982) (CDA). That section of the CDA provides that when a contractor elects to bring an action directly on a claim in this court, in lieu of appealing the decision of a contracting officer to a Board of Contract Appeals, the contractor "shall" file his complaint with the court "within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim * * *." In its reply brief, however, defendant withdrew its argument in this regard relative to the Third and Ninth Causes of Action.

Plaintiff's First and Third Causes of Action relate to the Hoodoo contract. Plaintiff's First Cause of Action seeks equitable adjustments relative to six claims. Five of these claims were presented to the contracting officer prior to October 1983 and were uncertified. See 41 U.S.C. § 605(c)(1).[3] The contracting officer denied the claims on October 26, 1983. Plaintiff filed a complaint relative to these claims in

---

**2.** While plaintiff's complaint in Docket No. 113–83C was most generalized and sketchy, subsequent proceedings disclosed that portions of one claim (Claim 1, Items 5 and 7) sought consequential damages which, on defendant's motion for partial summary judgment, were dismissed by the court on April 8, 1985. *H.H.O., Inc. v. United States,* 7 Cl.Ct. 703 (1985).

**3.** Four of these claims, as set forth in the complaint in Docket No. 201–86C, were clearly un-

der $50,000 and thus, under section 605(c)(1), were not required to be certified. These were claims under Parts VII, VIII, IX and XI of the complaint in Docket No. 201–86C. The remaining claims were either lumped together under one claim figure ($178,695), see Part VI(1) (2) (3) (4), or were not the subject of a claim under October 26, 1983 decision, see Part X of the complaint in Docket No. 201–86C.

the court on March 23, 1984. This complaint made no mention of the October 26, 1983 decision of the contracting officer. Since this complaint, filed on March 23, 1984, made no mention of any contracting officer's decision relative to the claims asserted therein, the complaint, on defendant's motion to dismiss to which plaintiff filed no response, was properly dismissed without prejudice. *See* 5 Cl.Ct. 822 (1984).

Plaintiff thereafter submitted a certified claim to the contracting officer on May 29, 1985. In this submission, plaintiff included claims previously decided by the contracting officer on October 26, 1983, as well as the one claim set out in the complaint in docket No. 201–86C (Part X) which was not presented to and considered by the contracting officer relative to the October 26, 1983 decision. The claim in Part X was for $24,785 and did not require certification. The contracting officer rendered his final decision on plaintiff's May 29, 1985 claims submission on July 23, 1985. In referring to those claims previously presented to him, the contracting officer stated in pertinent part: " * * * The Contracting Officer's final decision denying these claims was issued by letter dated October 26, 1983. Those claims were not appealed, are no longer for consideration and are no longer subject to appeal."

Plaintiff's Third Cause of Action is based on the contention that termination of the Hoodoo contract for default on December 8, 1983 was not justified and plaintiff is entitled to have that action converted to a termination for convenience.

As to the First Cause of Action, a significant fact is that the claims giving rise to the October 26, 1983 decision were not certified. It is established that a decision by a contracting officer on an uncertified claim is of no consequence. *Skelly and Loy v. United States,* 231 Ct.Cl. 370, 377, 685 F.2d 414, 419 (1982). However, the claims to which such a holding is applicable are claims that are required to be certified by

the CDA, i.e., claims of more than $50,000. 41 U.S.C. § 605(c)(1). Claims decided by a contracting officer which are for less than $50,000 are not required to be certified.

The October 26, 1983 decision of the contracting officer dealt with six separate claims. As evidenced by plaintiff's complaint in Docket No. 201–86C, filed on March 25, 1986, four of the claims ruled on in the October 26, 1983 decision involved claims for amounts under $50,000 (Parts VII, VIII, IX and XI). Accordingly, the contracting officer's decision on these claims had vitality and finality absent other considerations.[4] Under the CDA, 41 U.S.C. § 609(a)(3), plaintiff was required to appeal the decision on those claims within 12 months of receipt thereof. It is clear plaintiff failed to do this. Accordingly, those claims, set out in Parts VII, VIII, IX and XI of the First Cause of Action in the complaint in Docket No. 201–86C must be dismissed. *Hawkins v. United States,* 1 Cl.Ct. 221 (1983).

The above disposition leaves Part VI and Part X of plaintiff's First Cause of Action for further consideration. Part VI consists of at least four somewhat related claims which seek a total recovery of $178,695. In the October 26, 1983 decision, it was pointed out that no specific dollar amount was claimed in this regard. In its May 29, 1985 certified claims, which were denied by the contracting officer on July 23, 1985, plaintiff sought $178,695 on the Part VI claim. The Part X claim was not part of the October 26, 1983 decision since it was not presented to the contracting officer for decision until May 29, 1985 (as claim No. 5). The contracting officer considered this claim on the merits in his July 23, 1985 decision.

As to Part VI of the complaint, defendant argues that it should be dismissed based on the finality which should be accorded the October 26, 1983 decision by the contracting officer denying the claim. It seems clear, however, that the related

---

4. The court concludes that these separately stated claims arose out of unrelated conduct and do not involve closely connected facts. Thus, it would be unreasonable to consider these claims unitary claims for certification purposes. *See Walsky Constr. Co. v. United States,* 3 Cl.Ct. 615 (1983) and cases cited therein.

claims asserted in Part VI of the complaint are for more than $50,000 and thus had to be certified. Accordingly, as indicated above, the contracting officer's denial of said claims in his October 26, 1983 decision is of no consequence. Defendant's position that a contracting officer's decision on uncertified claims over $50,000 have vitality if not appealed or resubmitted within 12 months of receipt thereof is rejected. Such a decision is a nullity and the limitations provision of section 609(a)(3) of the CDA is accordingly not activated. *United Constr. Co. v. United States*, 7 Cl.Ct. 47, 51 (1984).

As to Part X of the complaint, under the First Cause of Action, defendant argues that since plaintiff did not submit the claim to the contracting officer until May 29, 1985, which was one and one-half years after the December 8, 1983 termination of the contract, the claim in Part X should be dismissed as untimely. However, the contracting officer considered this certified claim (since the claim was for an amount under $50,000 it need not have been certified) and decided it on the merits, evidencing no prejudice because of the "untimeliness" of the claim presentation. Under the circumstances, defendant's untimeliness argument may lack merit. To the extent it may be deemed to have merit, the contracting officer may be deemed to have waived untimeliness by considering the claim on the merits. *See Copco Steel & Engineering Co. v. United States*, 169 Ct.Cl. 601, 616–18, 341 F.2d 590, 598–600 (1965) and cases cited therein.

The existence of possible factual questions as to Parts VI and X of plaintiff's First Cause of Action preclude granting defendant's motion to dismiss or motion for summary judgment on these claims.

In summary, Parts VII, VIII, IX and XI of Plaintiff's First Cause of Action are dismissed, Parts VI and X remain for further proceedings.

In plaintiff's Third Cause of Action, it challenges the December 8, 1983 termination of the Hoodoo contract for default. Plaintiff, in its complaint filed on March 25, 1986, seeks to have the default termination converted to a termination for convenience. There is no evidence that excess reprocurement costs were assessed against plaintiff as a result of this default termination. Arguably, this default claim could be deemed barred by the 12 month CDA statute of limitations. *Hawkins v. United States, supra. See also D. Moody & Co., Inc. v. United States*, 5 Cl.Ct. 70, 79 (1984). There is no allegation in the complaint, nor any evidence elsewhere, that plaintiff presented its termination for convenience claim, properly certified, to the contracting officer for decision. Accordingly, the court, in any event, is without jurisdiction of this claim. *See H.H.O. Inc. v. United States*, 7 Cl.Ct. 703 (1984). Plaintiff's Third Cause of Action is dismissed without prejudice.[5]

### B. *Other Default Termination Claims*

Under its Sixth Cause of Action, plaintiff challenges the default termination on November 9, 1984 of its Six Mile contract and seeks to have such termination converted into a termination for convenience (Parts XXXVI–XXXVIII of the complaint in Docket No. 201–86C). There is no allegation in the complaint that plaintiff presented its termination for convenience claim to the contracting officer for decision. *See H.H.O. Inc. v. United States, supra.* Accordingly, plaintiff's Sixth Cause of Action

---

**5.** Viewing the default termination decision of December 8, 1983 as a claim under the Contract Disputes Act (CDA), then plaintiff's claim would be subject to dismissal, with prejudice, since it was not filed with the court within 12 months of receipt thereof by the contractor. *See Z.A.N. Co. v. United States*, 6 Cl.Ct. 298 (1984). Defendant, however, in its reply brief backed away from this position. Again, one could view the rendition of a default termination decision, without any monetary claim associated therewith, as not constituting a claim under the CDA. *See Industrial Coatings, Inc. v. United States*, 11 Cl.Ct. 161 (1986); *Gunn-Williams v. United States*, 6 Cl.Ct. 820 (1984) *motion to vacate denied* 8 Cl.Ct. 531 (1985). Dismissal of such a claim, however, would be without prejudice. Defendant would now espouse this view of the default termination in question. The question remaining is whether the dismissal at hand should be "with prejudice" or "without prejudice". While there is uncertainty and confusion in this area of CDA law, dismissal without prejudice gives plaintiff the benefit of the doubt.

is subject to dismissal without prejudice as was dismissal of the Third Cause of Action.

Under its Ninth Cause of Action, plaintiff challenges the default termination on July 17, 1984 of its Alligator contract and seeks to have such termination converted into a termination for convenience (Parts LIII–LVII). On January 10, 1986, the contracting officer issued a final decision holding that plaintiff owed the government $254,153.14 as excess reprocurement costs because of the above-mentioned default termination. Plaintiff, in this final decision, was advised of its appeal right options.

■ An appeal of this default termination and excess reprocurement cost assessment was filed in March 1986, with the Board of Contract Appeals, Department of Agriculture (BCA) and was docketed as AGBCA No. 86–219–1. It is established that a contractor who elects to appeal its dissatisfaction with a contracting officer's decision on a claim to the BCA in lieu of direct access to this court is thereafter precluded from bringing that claim before the court. *Aviation & Transp. Properties v. United States*, 11 Cl.Ct. 87, 88 (1986). A contractor has the right to elect the forum in which to proceed on a claim, but once that election is made, it is generally irreversible. However, such an election must be an informed one. *Essex Electro Engineers v. United States*, 702 F.2d 998 (Fed. Cir.1983). Plaintiff concedes that such a claim was filed with the BCA but contends the filing was in error. Plaintiff claims the appeal was filed by plaintiff's president without the knowledge of consent of its counsel. The appeal is presently before the BCA.

■ The question here is whether plaintiff made a binding election to proceed with this claim before the BCA such that it cannot disavow it. *See Prime Construction Co. v. United States*, 231 Ct.Cl. 782, 783 (1982). On January 12, 1987, plaintiff filed a copy of an AGBCA No. 86–219–1 Ruling dismissing plaintiff's above-mentioned appeal on the ground that plaintiff, in substance, elected to proceed in the Claims Court rather than in the AGBCA. Such a Ruling, deemed appropriate by the court, justifies rejection of defendant's motion to dismiss plaintiff's Ninth Cause of Action.

C. *Alternative Breach of Contract Claims*

In its Second (Hoodoo contract), Fifth (East Six Mile contract) and Eighth (Alligator contract) Causes of Action, plaintiff presents Alternative claims, i.e., alternative to the equitable adjustment claims it presents in its First (Hoodoo contract), Fourth (East Six Mile contract) and Seventh (Alligator contract) Causes of Action. Plaintiff concedes that the Second, Fifth and Eighth Causes of Action are "based upon the same facts and events" which underscore its First, Fourth and Seventh Causes of Action.

Defendant argues that the Second, Fifth and Eighth Causes of Action are duplicate of plaintiff's First, Fourth and Seventh Causes of Action. Since they are merely repetitious, defendant argues, they serve no purpose and should be dismissed. Defendant offers no case law in support of this position. The contracting officer in his consideration of plaintiff's alternative breach of contract claims in his decisions of July 23, 1985 (Hoodoo contract), August 15, 1985 (East Six Mile contract) and November 25, 1985 (Alligator contract) observed that the breach claims were essentially the same as the equitable adjustment claims previously denied by him. The fact that plaintiff pleads the breach claims as alternative claims suggests rather clearly that recovery on the First, Fourth and Seventh Causes of Action would preclude recovery on the Second, Fifth and Eighth Causes of Action. Further, if recovery is denied on the equitable adjustment claims, recovery most probably would be precluded on the breach claims.

■ In its responding brief, plaintiff states that its Second, Fifth and Eighth Causes of Action are "Alternative Theories Of Recovery" based on the claims already set forth in the First, Fourth and Seventh Causes of Action. Plaintiff states that RUSCC 8(e)(2) permits it to plead alterna-

tively or hypothetically, either in one count or in separate counts. Plaintiff observes it may also assert alternative theories of recovery which may conflict with one another. Plaintiff's position as a general observation has surface appeal. *See* 2B Moore, Moore's Federal Practice ¶ 8.32 (1986); *Hunter v. H.D. Lee Co.*, 563 F.Supp. 1006 (N.D.N.Y.1983); *In re King Enterprises*, 678 F.2d 73 (8th Cir.1982); *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460 (9th Cir. 1977). However, its application in government contract cases under the circumstances of this case is precluded. A contractor cannot maintain breach claims based on claims for which contractual relief is available. *Hoel-Steffen Constr. Co. v. United States*, 197 Ct.Cl. 561, 574, 456 F.2d 760, 768 (1972). Plaintiff cannot effect breach of contract claims by merely relabeling claims for which relief is available under the contracts. *Northbridge Electronics, Inc. v. United States*, 195 Ct.Cl. 453, 458, 444 F.2d 1124, 1127 (1971). *See also Marden Corp. v. United States*, 194 Ct.Cl. 799, 808, 442 F.2d 364, 369 (1971). This was so because the contract clauses, i.e., changes, etc., converted what would otherwise be deemed a breach of contract into administrative relief provisions, thus merging certain breach claims into equitable adjustment claims. The CDA did not affect this salutary proposition. The CDA merely gave the Boards of Contract Appeals additional breach of contract jurisdiction over claims not covered by contract remedy clauses. Defendant's motion to dismiss plaintiff's Second, Fifth and Eighth Causes of Action is granted.

### D. *Untimely Claims*

In its Fourth Cause of Action (East Six Mile contract) and in its Seventh Cause of Action (Alligator contract), plaintiff seeks to recover on equitable adjustment claims. Under the Six Mile contract, plaintiff advances nine separate equitable adjustment claims (Parts XX–XXXI of the complaint). Under the Alligator contract, plaintiff advances seven separate equitable adjustment claims (Parts XXXIX–XLVIII of the complaint). These claims were based on the "Changes", "Differing Site Condi-

tions", "Suspension of Work" and "Damages for Delay" clauses of the contracts in question. For present purposes, the "notice" provisions of those clauses is the focal point of dispute relative to the Fourth and Seventh Causes of Action.

Under these clauses it is provided, in general terms, that written notice had to be given by the contractor to the contracting officer relative to a claim within specified time periods. For example, if the contractor intended to assert a claim for an equitable adjustment under the Changes clause, he was required by the clause to give written notice of the claim within 30 days of receipt of a change order, or incurrence of any increase or decrease in the contractor's costs because of government action or inaction. Likewise, if the contractor intended to submit a claim under the Differing Site Conditions clause, he was required to give written notice to the contracting officer before any site conditions were disturbed in order to have a claim based thereon allowed. If a delay was increasing the contractor's costs, the Damages For Delay clause required the contractor to give written notice within ten (10) days from the beginning of any such delay. Finally, under the Suspension of Work clause, the contractor was required to notify the contracting officer in writing within 20 days of the incurrence of costs under that clause.

As indicated earlier, the East Six Mile contract was terminated for default on November 9, 1984. Plaintiff did not submit its written equitable adjustment claims to the contracting officer until May 29, 1985, more than 6 months after the default termination. There is no evidence in the materials at hand that a written notice of any of these equitable adjustment claims were presented to the contracting officer as required by the contract clauses referred to above prior to May 29, 1985. The contracting officer did not rule on the merits of any of the claims.

As stated previously, the Alligator contract was finally terminated for default on July 17, 1984. Plaintiff did not submit its written equitable adjustment claims to the

contracting officer until May 29, 1985, more than 10 months after the default termination.[6] There is no evidence in the materials at hand that a written notice of any of these equitable adjustment claims were presented to the contracting officer as required by the contract clauses referred to above prior to May 29, 1985.

Defendant argues these untimely claims should be dismissed citing *Schnip Building Co. v. United States,* 227 Ct.Cl. 148, 645 F.2d 950 (1981) and *Mingus Constructors, Inc. v. United States,* 10 Cl.Ct. 173 (1986), *aff'd. on other grounds,* 812 F.2d 1387 (Fed.Cir.1987). Defendant also relies on the decision of the contracting officer on August 15, 1985 on plaintiff's May 29, 1985 claims wherein he denied the equitable adjustment claims and the alternative breach of contract under the East Six Mile contract because the notice requirements of the Changes and Differing Site conditions clause were not complied with. Concluding that the claims under the East Six Mile contract were not timely filed, since filed after the default termination, the contracting officer denied said claims, pointing out that this untimely action on plaintiff's part "prejudices the Government's right to take any correct action which it may have deemed necessary at the time, had it been given timely notice."

In his November 25, 1985 decision denying plaintiff's eight separate claims, including an Alternative Claim for Breach of Contract, filed on May 29, 1985 relative to the Alligator contract, the contracting officer considered each separate claim on the merits and in detail. However, the contracting officer also took specific note of the fact that no notice of claim was filed until the May 29, 1985 claim letter with respect to claims 1, 2 and 7. No mention of notice requirements was made relative to

claims 3, 4, 5, 6 and 8 by the contracting officer in his November 25, 1985 decision.

In response to defendant's untimely notice arguments, plaintiff does not deny the fact that formal notices of claims on these two contracts were not presented to the contracting officer until May 29, 1985, months after the contracts were terminated for default. Plaintiff does argue, however, that pertinent Forest Service personnel had actual or constructive notice of the events and circumstances underscoring the claims advanced by plaintiff and this, plaintiff continues, is sufficient to meet the notice requirements of the various contract clauses mentioned above. Plaintiff relies on numerous excerpts from contract daily diaries and other contract letters and materials, together with affidavits from plaintiff's business manager to support its contention that the contracting officer "had enough personal or constructive knowledge [of plaintiff's claims on the East Six Mile and Alligator contracts] to have actual or constructive notice sufficient to decide those claims without prejudice to the Government." Plaintiff's affidavits indicate verbal complaints at various times to the contracting officer's representative or Forest Service inspector on the site, and telephone calls to the contracting officer at various times relative to the facts and events underscoring the claims. The fact, however, that the contracting officer is aware of problems or contentions in performance is not the same as providing notice of a monetary claim against the government. *See Gulf & Western Industries v. United States,* 6 Cl.Ct. 742, 750 (1984); *see also Mingus Contractors, Inc. v. United States, supra.* Plaintiff does not contest the fact it filed no written notice relative to any of its claims under the East Six Mile contract or the Alligator contract until May

---

**6.** The default termination can be analogized to the final payment to a contractor in that it marks the end of the contract. It has been held that the date of final payment to a contractor by the government can serve to bar consideration of claims filed subsequent to that date. *See Gulf & Western Industries, Inc. v. United States,* 6 Cl.Ct. 742 (1984); *G.M. Shupe, Inc. v. United States,* 230 Ct.Cl. 947 (1982); *Jo-Bar Mfg. Corp.*

*v. United States,* 210 Ct.Cl. 149, 535 F.2d 62 (1976). Further, the default termination was sufficient justification to consider the contract at an end in any event. The government certainly did not waive the breach of contract underscoring the default termination. *See Northern Helex Co. v. United States,* 197 Ct.Cl. 118, 134, 455 F.2d 546, 555 (1972).

29, 1985, months after termination for default of both contracts.

Plaintiff has cited no cases in support of its contention that since the contracting officer had actual or constructive knowledge of the facts and events underscoring said claims written notice of said claims, as required by the clauses cited above, is unnecessary and thus cannot serve to preclude consideration of the claims in this court. However, case law does indicate that the notice provisions relied on by defendant "not be applied too technically and illiberally where the government is quite aware of the operative facts. *See Copco Steel & Engineering Co. v. United States,* 169 Ct.Cl. 601, 616, 341 F.2d 590, 598 (1965)." *Hoel-Steffen Constr. Co. v. United States,* 197 Ct.Cl. 561, 573, 456 F.2d 760, 768 (1972); *Simks Constr. Co. v. United States,* 11 Cl.Ct. 257, 276–78 (1986). *See also* Weintraub, *"Apprisal Notice" Requirements in Federal Construction Contracts: Their Continued Validity,* 12 Pub. Contract L.J. 40 (May 1981); J. McBride & I. Wachtel, 4A Government Contracts § 29.40 (1984).

As to the East Six Mile contract claims, it is clear the contracting officer rejected all claims as untimely. He did not deal with the merits of the claims. As to the Alligator contract claims, the contracting officer dealt in detail with each claim, while noting the untimeliness, specifically, as to three of the eight claims. This latter situation raises the question, not raised by plaintiff, as to whether the contract requirement for timely written notice of each claim was waived by the contracting officer by his consideration of the claims on the merits. Given the contracting officer's reference to notice requirements and timeliness in his consideration of three of the eight claims, one might conclude he did not intend to waive the notice requirements of the contract clauses in question.

■ The basic question remaining is whether, under the circumstances of these two contracts, the notice requirements of the contract clauses in question can be subordinated to the actual or constructive knowledge by the contracting officer of the facts and events underscoring the claim. As to the purpose of the notice requirement generally see *Roberts v. United States,* 174 Ct.Cl. 940, 952, 357 F.2d 938, 946 (1966). It is settled that a contractor's failure to adhere to the notice requirements of contract clauses can result in claims presented pursuant to said clauses being disallowed. *See Jo-Bar Mfg. Corp. v. United States,* 210 Ct.Cl. 149, 156–57, 535 F.2d 62, 66 (1976); *Eggers & Higgins v. United States,* 185 Ct.Cl. 765, 785, 403 F.2d 225, 236 (1968); *Speciality Assembling & Packing Co. v. United States,* 174 Ct.Cl. 153, 179–80, 355 F.2d 554, 570 (1966). *See also Mingus Constructors, Inc. v. United States, supra.* On the other hand, one should not be technical or illiberal in the "notice" area, as indicated above. *See G.M. Shupe v. United States,* 5 Cl.Ct. 662, 727 (1984). Defendant's position on the notice question is that failure to give the written notice required by various contract clauses serves, as a matter of law, to preclude any action based on said clauses. Case law does not support this position. Notice requirements are subject to estoppel by an act of waiver depending on the facts of each case. *Roberts v. United States, supra,* 174 Ct.Cl. at 952–53, 357 F.2d at 946–47.

■ This case (Docket No. 201-85C) is before the court on defendant's motion to dismiss. Plaintiff has submitted materials which raise a question as to whether the contracting officer was aware of the operating facts of each of the involved claims and whether his actions should be deemed a waiver of the notice requirements of the various contract clauses. Further, it is not completely clear to the court as to whether the government was prejudiced, and if so in what manner it was prejudiced. It is the government's burden to establish the fact of prejudice. The above discussion discloses the existence of fact questions not subject to resolution on the basis of the materials at hand.

Accordingly, defendant's motion to dismiss (or for summary judgment) is denied without prejudice as to plaintiff's Fourth and Seventh Causes of Action.

## E. *Election Of Options*

Under section 609(a)(1) of the CDA, a contractor, at its option, may elect to bring an action directly in this court relative to a decision by a contracting officer in lieu of appealing said decision to the BCA. Defendant alleges that plaintiff elected to appeal the denial of his claims by the contracting officer on August 15, 1985 to the AGBCA. These claims are set out as the Fourth and Fifth Causes of Action in the complaint in Docket No. 201–86C. Defendant refers to a dismissal with prejudice of an appeal on a claim or claims under Contract No. 50–04H1-3-9264C, which is the East Six Mile contract, on January 13, 1986 by the BCA. That appeal was docketed as AGBCA No. 85–512–1. The claim(s) dismissed is not otherwise identified in the BCA Order. Since plaintiff elected to proceed first in the BCA, defendant argues, review of these dismissed claims in this court is precluded, citing *Prime Construction Co. v. United States*, 231 Ct.Cl. 782 (1982).

The question here is not whether an election has been made, but whether the claim(s) before the BCA, which was the subject of the above-dismissal order, are the same claims advanced by plaintiff in its Fourth and Fifth Causes of Action. In its brief, plaintiff persuasively demonstrated that the claim(s) covered by the BCA dismissal order of January 13, 1986, did not involve the claims which are the subject of this litigation. Defendant's reply brief is silent on this matter, a fact which serves to confirm the validity of plaintiff's assertions that the claims in issue were not the same as those covered by the AGBCA No. 85–512–1 dismissal order. Defendant's motion to dismiss, in this regard, is therefore denied.

Under its Ninth Cause of Action, plaintiff challenges the termination of the Alligator contract (Parts LVI and LVII of the complaint). Defendant notes that this termination and subsequent reprocurement cost assessment actions have been docketed by the AGBCA, No. 86–219–1, as appeals taken by plaintiff on contracting officer decisions terminating the contract for default and assessing reprocurement costs against plaintiff. The complaint in the BCA was filed on March 3, 1986 while the complaint was filed in this court on March 25, 1986. Plaintiff does not deny the fact of appeal, but argues the appeal was filed in error by plaintiff's managing officer without the consent of counsel. This matter was disposed under Part B, *supra*, of this opinion.[7]

## F. *Claim Presentation To Contracting Officer*

Plaintiff's Tenth Cause of Action in the complaint under Docket No. 201–86C embraces the claim set forth in Docket No. 113–83C. In the complaint in Docket No. 113–83C, plaintiff alleges that defendant's improper contract changes, delays and suspension of work entitle plaintiff to equitable adjustments relative to the Fishloop contract. In its complaint, plaintiff fails to allege any action or decision by the contracting officer. It is not known whether plaintiff presented these Fishloop contract claims to the contracting officer for decision. Defendant, in its motion to dismiss, argued that plaintiff's Tenth Cause of Action must be dismissed because plaintiff never presented it to the contracting officer for decision, citing, *inter alia*, *Milmark Services, Inc. v. United States*, 231 Ct.Cl. 954, 956 (1982). Plaintiff did not respond to this argument in its reply brief.

It is settled that contract claims, properly certified if over $50,000, must be presented to the contracting officer for decision before direct access to this court is permitted. Plaintiff is, or should be, familiar with this requirement. *H.H.O., Inc. v. United States*, 5 Cl.Ct. 822 (1984) and cases cited therein. Absent pleadings which establish a basis for this court's jur-

---

7. Defendant suggests that several of the equitable adjustment claims asserted by plaintiff under the Alligator contract in its Seventh Cause of Action (Parts XLII–XLV) were included in the complaint filed on March 3, 1986 with the AGBCA and assigned Docket No. 86–219–1. For example, the AGBCA complaint charges, *inter alia*, poor working conditions. Such an allegation can be found in Part XLII of the complaint in this court.

isdiction, the complaint is subject to dismissal. Accordingly, the complaint in Docket No. 113–86C is dismissed without prejudice.[8]

### Conclusion

Defendant's motion to dismiss, or for summary judgment is granted in part and denied in part as follows:

a) Defendant's motion to dismiss is granted as to Parts VII, VIII, IX and XI of the First Cause of Action and said Parts are accordingly dismissed with prejudice. Defendant's motion to dismiss Parts VI and X of the First Cause of Action is denied without prejudice. Parts VI and X of the First Cause of Action remain for further proceedings.

b) Plaintiff's Second, Fifth and Eight Causes of Action, Alternative claims, are dismissed with prejudice.

c) Plaintiff's Third Cause of Action is dismissed without prejudice.

d) Defendant's motion to dismiss plaintiff's Fourth Cause of Action is denied without prejudice. Plaintiff's Fourth Cause of Action remains for further proceedings.

e) Plaintiff's Sixth Cause of Action is dismissed without prejudice.

f) Defendant's motion to dismiss plaintiff's Seventh Cause of Action is denied without prejudice. Plaintiff's Seventh Cause of Action remains for further proceedings.

g) Defendant's motion to dismiss plaintiff's Ninth Cause of Action is denied without prejudice. Plaintiff's Ninth Cause of Action remains for further proceedings.

h) Plaintiff's Tenth Cause of Action in Docket No. 201–86C, is subsumed by and consolidated with the complaint in Docket No. 113–83C. Defendant's motion to dismiss plaintiff's Tenth Cause of Action in Docket No. 201–86C is granted. This same Cause of Action is restated in Docket No. 113–83C and the complaint in this Docket is also to be dismissed without prejudice. No

costs are to be assessed relative to the dismissal of the complaint in Docket No. 113–83C.

i) With reference to Docket No. 201–86C, counsel are directed to communicate with one another relative to those portions of Docket No. 201–86C which are identified above as subject to further proceedings and thereafter provide the court, within sixty (60) days of the date of this opinion, with a schedule setting forth a date discovery can be completed as to the claims remaining to be disposed of, a date for exchange of documents and witness lists, a date for submission of proposed pretrial findings of fact and briefs, and an expected trial date.

---

**8.** As indicated earlier, *see* note 2, *supra,* portions of plaintiff's damage claim in Docket No. 113– 86C have already been dismissed.