**SKELLY AND LOY**

v.

**The UNITED STATES.**

**No. 8–82C.**

United States Court of Claims.

Aug. 11, 1982.

Heath L. Allen, Harrisburg, Pa., attorney of record, for plaintiff; Gary E. French and Keefer, Wood, Allen & Rahal, Harrisburg, Pa., of counsel.

Richard W. Oehler, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant; Jack Caolo, Dept. of Energy, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and BENNETT, Judges.

ON DEFENDANT'S MOTION TO DISMISS

BENNETT, Judge:

This is an action under the Contract Disputes Act of 1978 (CDA or Act), 41 U.S.C. § 609(a)(1),[1] challenging a contracting officer's decision denying a claim for additional compensation under a contract entered into between plaintiff and the U. S. Department of Energy (DOE). Defendant has brought a motion to dismiss the petition, which plaintiff opposes. Since we find that plaintiff has not certified its claims as required by statute, we grant defendant's motion.

On August 16, 1979, plaintiff, a partnership, and defendant entered into DOE Contract No. DE–AC01–79ET11268, a technical support services contract relating to DOE programs in mining and preparation of solid fuels. The disputes clause of the contract contained the statement that the contract was subject to the CDA, and any claim over $50,000 had to be certified by the contractor upon submission to the contracting officer. By a letter dated December 11, 1980, plaintiff, through its attorneys, requested an upward modification in the fixed-fee provisions of the contract, citing increased costs allegedly caused by greater demands on plaintiff than originally envisioned. On April 7, 1981, the contracting officer issued a final decision denying, on the merits,

---

1. Hereafter, all section numbers refer to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (Supp. IV 1980).

plaintiff's claim for additional compensation. On January 8, 1982, plaintiff filed its petition in this court, seeking damages of $169,562 and $602,816 on alternate claims under the direct access provisions of the CDA.

In its motion to dismiss, defendant presents two grounds in support of its motion: (1) plaintiff has failed to certify its claims as required by the Act; and (2) plaintiff has failed to exhaust administrative remedies in regard to its first claim for relief. Since we find that plaintiff has not properly certified its claims, we dismiss the petition for that reason alone and do not reach the second defense.

The requirement that a claim be certified is contained in section 605(c)(1), which, in pertinent part, states:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

In *Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. ——, 673 F.2d 352 (1982), we held that a claim over $50,000 is not a valid claim and cannot be entertained by this court unless it has been certified. *See also Troup Bros. v. United States*, Ct.Cl. No. 622–80C (order entered June 8, 1982). Furthermore, the fact that the contracting officer considered the claim on the merits does not vitiate this requirement, as he "had no authority to waive a requirement that Congress imposed." *Lehman*, 230 Ct.Cl. at ——, 673 F.2d at 356. We have also held that a contractor cannot retroactively meet this requirement—for the purpose of direct judicial review—by certifying the claim after the final decision of the contracting officer. *W. H. Moseley Co. v. United States*, 230 Ct.Cl. ——, 677 F.2d 850 (1982), *petition for*

*cert. filed*, 50 U.S.L.W. 3998.20 (U.S. June 21, 1982) (No. 81–2323). *See also Troup Bros.* [2]

Plaintiff presents three arguments in support of its position that we should deny defendant's motion to dismiss because of failure to certify the claim: (1) lack of certification is not the proper basis for a dispositive motion; (2) certification need not be in writing, and additional facts are needed to determine whether oral certification was sufficient; and (3) certain written submissions provided by plaintiff satisfied the certification requirement.

As to plaintiff's first argument, lack of certification is indeed the proper basis for a dispositive motion, as evidenced by our decisions in *Lehman, Moseley* and *Tri-Central, Inc. v. United States*, Ct.Cl. No. 275–81C (order entered March 23, 1982). Rule 38(b), cited by plaintiff, states that every defense shall be asserted in a responsive pleading, *except* (among others) lack of subject matter jurisdiction, which may be raised by motion. In *Moseley* we stated "certification of a claim * * * is a jurisdictional prerequisite to a direct challenge in this court of a contracting officer's decision * * *." 230 Ct.Cl. at ——, 677 F.2d at 851.

Plaintiff's assertion that the certification required by the Act need not be in writing is clearly without merit. Section 605(a) states that all claims "shall be in writing," and it clearly follows that the requirement in section 605(c)(1) that the contractor certify the claim must also be in writing.[3] The concept of a written claim with oral certification is antithetical to the plain meaning of section 605. Furthermore, the disputes clause of the contract stated that the contractor shall certify a claim for over $50,000, as follows:

> I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my

---

**2.** It should be noted that in *Moseley* and *Troup Bros.* the contractor certified (or proposed to certify) the claim after filing its petition in this court.

**3.** Also, section 605(c)(2) states, "A contracting officer shall, within sixty days of receipt of a *submitted certified claim* over $50,000 * * *." (Emphasis added.)

knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

(Contractor's Name) _____

(Title) _____ [4]

Plaintiff argues that although the above clause "appears" to require written certification, a close reading indicates that it only states what information must be certified, not how certification is to take place. This argument is clearly specious.

Finally, plaintiff argues that certain statements contained in its reproposal (suggesting modification of the contract) satisfied the certification requirement. Specifically, plaintiff asserts that the printed statements, in the "Contract Pricing Proposal" form, that the proposal "reflects our best estimates as of this date" and that the cost summary conforms with the principles set forth in agency regulations, constitutes certification of the claim. The requirement that the claim be made in good faith, plaintiff asserts, can be satisfied by the introduction of depositions testifying to representations to that effect made by plaintiff's officers.[5] This combination of written and oral statements, provided in piecemeal fashion, certainly is not what Congress meant by "certification." As we recently stated in *Moseley*, "Because of the significant role certification plays in the statutory scheme, we hold that to certify a claim properly a contractor must make a statement which simultaneously makes all of the assertions required by 41 U.S.C. § 605(c)(1)." 230 Ct.Cl. at ——, 677 F.2d at 852.

It is clear from a reading of the statute and prior decisions of this court that we have no jurisdiction, under the CDA, to entertain an uncertified claim for over $50,-000. What is perhaps not clear from our prior decisions is the consequences of a contractor's failure to certify the claim. In our recent decisions in *Lehman*[6] and *Moseley*[7] we may have inadvertently given claimants the impression that after we dismiss for lack of certification, they may directly proceed to the board of contract appeals (BCA or board) as a matter of course. In many cases, however, this simply may not be a viable means of appeal of a contracting officer's decision.

Both *Lehman* and *Moseley* involved a situation where the contract in question was entered into before the effective date of the Act (March 1, 1979), and the contractor filed its uncertified claim after the effective date.[8] In such a situation, we have no jurisdiction under the CDA, and any direct access suit under section 609, based upon an uncertified claim, must therefore be dismissed. Since the contracts were entered into before the effective date of the Act, however, the claimants had the option of either appealing under the Act or proceeding under the pre-Act disputes clause procedures whereby a claimant could appeal an adverse contracting officer's decision to the

---

**4.** This statement of certification is identical to the one set out in the Federal Procurement Regulations, 41 C.F.R. § 1–7.102–12 (February 19, 1980). Section 1–1.318–7 requires that the above clause be inserted in every contract to which the CDA applies. The clause was prescribed by the Office of Federal Procurement Policy on February 26, 1979. *See* section 1–1.-318–8(2)(b).

**5.** Apparently plaintiff means to demonstrate compliance through oral certification.

**6.** In *Lehman* we stated: "The plaintiff seems likely to obtain a full and fair review of its claim before the Board, with the right to subsequent judicial review in this court of any unfa-

vorable decision by the Board." 230 Ct.Cl. at ——, 673 F.2d at 356.

**7.** In *Moseley* we stated: "The court in *Lehman* directed the plaintiff to a relevant board of contract appeals, with the right to subsequent judicial review in this court." 230 Ct.Cl. at ——, 677 F.2d at 852. This statement strongly implied that the plaintiff in that case could follow the same procedure as the plaintiff in *Lehman*.

**8.** *See Folk Constr. Co. v. United States*, Ct.Cl. No. 99–80C (order entered January 16, 1981), where we held that when a contracting officer issues a decision after the effective date of the Act on an uncertified claim submitted *prior* to

board.[9]  Prior to the enactment of the CDA, certification was not a jurisdictional prerequisite.  Only in this context does the dicta in *Lehman* and *Moseley* apply.[10]

■ In the present case, however, all relevant events have occurred after the effective date of the Act.  As a consequence, the CDA would control all avenues of appeal available to the plaintiff.  Where, as here, the CDA alone governs a contractor's claim for compensation, the option of going before the board on an uncertified claim is simply not available.

The importance of certification to the statutory scheme of the CDA is clear, and has been enunciated by the court in *Lehman* and *Moseley*.[11]  But the Act also makes clear that the time for certification is upon submission of a written claim to the contracting officer.  Section 605(c)(1) & (2).  It is only after a decision of the contracting officer (or the failure to issue a decision

within a reasonable time) that a contractor may choose one of two routes of appeal.  Under section 609, a contractor may directly appeal an adverse decision of a contracting officer to this court (the "direct access" route).  Alternately, a contractor may appeal to the BCA, with a right of subsequent judicial review.  Sections 606, 607 (the "board" route).  Since the Act specifies that certification is to take place in the first instance—on submission of a claim to the contracting officer—a contractor who did not so certify would not only be barred from the direct access route, but from the board route as well.  Since the defect relates to the very foundation of the statutory scheme—the claim before the contracting officer—the board should be well within its rights to deny the claim for the same reason as this court, lack of jurisdiction because of the failure to certify the claim properly.[12]

that date, a contractor may proceed under the Act and appeal directly to this court.

9. The CDA states that with respect to pre-March 1, 1979 contracts, "[n]otwithstanding any provision in a contract made before the effective date of this Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter."  Pub.L.No. 95–563, § 16, 92 Stat. 2391, 41 U.S.C. § 601 note (Supp. IV 1980).

10. *But cf. Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. ——, 656 F.2d 644 (1981), where we held that a contractor who first filed an appeal to the board (under a pre-Act contract) has made an election to proceed under pre-Act (disputes clause) procedures, and could not, therefore, file a direct access suit in this court.  Conceivably, a board could use this same rationale to bar an appeal after we dismissed a direct access claim because of failure to certify the claim.  For elections involving a choice of forums under the CDA, *see Santa Fe Engineers, Inc. v. United States,* 231 Ct.Cl. ——, 677 F.2d 876 (1982), where we found that the Act authorizes the alternative forums as an "either-or" proposition—*i.e.,* once a contractor elected to appeal to the board, it could not seek judicial review under the direct access provisions (where the contractor was adequately apprised of its options under the CDA).  However, since we hold that where a contractor has not certified the claim, the review process has not begun (see discussion later in text), no valid "election" has taken place.  As a consequence, a contractor—who

resubmits a certified claim to the contracting officer for a new (valid) decision—should not be foreclosed from appealing such a decision under either of the alternative routes.

Another (potential) obstacle to going directly to the board after dismissal by this court is the period of limitations for filing an appeal of a contracting officer's decision.  Under pre-Act procedures, a contractor (generally) has 30 days in which to appeal an adverse contracting officer's decision to the board.  In most instances, then, a board could dismiss such an appeal for lack of timeliness.  Whether or not the board decides to waive this requirement would be a matter within the board's discretion, absent abuse of that discretion.  *Linair, Inc. v. United States,* 219 Ct.Cl. 654 (1979); *Tapper v. United States,* 206 Ct.Cl. 446, 514 F.2d 1003 (1975).

11. In brief, certification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim under section 604 of the Act.  It is also designed to "discourage the submission of unwarranted contractor claims and to encourage settlements."  *Folk Constr. Co.*

12. That a board may indeed refuse to hear a claim because of lack of certification was recognized by the court in *Lehman,* which cited with approval decisions of the Armed Services Board of Contract Appeals and Defense Acquisition Regulations to that effect.  230 Ct.Cl. at ——, 673 F.2d at 355.

A reading of our prior decisions leads to the conclusion that the failure to certify the claim submitted to the contracting officer should taint every "decision" that follows. As mentioned earlier, we have previously ruled that the fact that a contracting officer has rendered a decision on the merits of an uncertified claim is of no consequence, as he "had no authority to waive a requirement that Congress imposed." *Lehman*, 230 Ct.Cl. at ——, 673 F.2d at 356. We have also previously pointed out that "the linchpin for appealing claims under the Contract Disputes Act is the contracting officer's 'decision.' No appeal, whether under 41 U.S.C. § 606 (Supp. II 1978) to the agency board of contract appeals or to this court under § 609, may be taken without such a 'decision'." *Paragon Energy Corp. v. United States*, 227 Ct.Cl. ——, 645 F.2d 966, 967 (1981). In *Paragon*, we later went on to elaborate on this requirement, "The Act, however, denies the contracting officer the authority to issue a decision at the instance of a contractor until a contract 'claim' in writing has been *properly submitted* to him for a decision. § 605(a). Absent this 'claim,' no 'decision' is possible—and, hence, no basis for jurisdiction in this court." (Emphasis added.) 227 Ct.Cl. at ——, 645 F.2d at 971. In *Folk Constr. Co.* we stated: "The statute thus requires that to be valid a claim must be properly certified." It would follow, then, if the "claim" to the contracting officer is not certified, it has not been "properly submitted," so the contracting officer does not have the authority to issue a decision.[13]

 In sum, any proceedings on an uncertified claim—under the CDA—are of no legal significance. In such a case, as in this case, the review process simply has not begun. The proper course of action—for a contractor whose case is dismissed for lack of jurisdiction—is the following: (1) properly certify the claim; (2) resubmit the claim to the contracting officer; and (3) if there is then an adverse contracting officer's decision, appeal either to the board (section 606) or directly to this court (section 609).[14]

Upon consideration of the parties' submissions, without oral argument, we conclude that plaintiff has failed to certify its claims as required by statute. Since we lack jurisdiction to entertain the claims before us, for the reasons stated, defendant's motion is granted but the petition is dismissed without prejudice.

---

13. Further support for the statement that a contracting officer does not have the authority to issue a decision on an uncertified claim is contained in the Federal Procurement Regulations, which state that a claim over $50,000 "*must* be certified * * * before settlement or decision on the claim * * *." (Emphasis added.) 41 C.F.R. § 1–1.318–3 (February 19, 1980).

14. *See White Plains Iron Works, Inc. v. United States*, Ct.Cl. No. 232–81C (order entered November 24, 1981), where we remanded a claim (certified subsequent to the filing of the petition) under the CDA to the contracting officer, under the authority of section 605(c)(5). In *White Plains*, unlike the present case, no decision (valid or not) was ever issued by the contracting officer. Since we hold that a contracting officer does not have the authority to issue a decision on an uncertified claim (under the CDA), a similar remedy would seem to be appropriate in this case. However, the authority under section 605(c)(5) to "stay the proceedings to obtain a decision on the claim by the contracting officer" appears to be predicated on the failure of the contracting officer to issue any decision at all within the "period required." Nevertheless, we may dismiss without prejudice with the suggestion that the contractor submit a certified claim to the contracting officer for a new decision, even if (arguably) we do not have the authority to remand the claim to the contracting officer.