WALSKY CONSTRUCTION COMPANY

v.

The UNITED STATES.

No. 672–82C.

United States Claims Court.

Oct. 20, 1983.

Wade R. Dann, Seattle, Wash., for plaintiff; Ulin, Dann, Elston & Lambe, Seattle, Wash., of counsel.

Michael D. Morin, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

WOOD, Judge:

In this case, arising under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* (Supp. V 1981), plaintiff sues to recover a total of $58,994.03 (plus interest and attorney fees) alleged to be due pursuant to a contract between plaintiff and defendant for the construction of a T-bar ski lift at Fort Greeley, Alaska.

Defendant has moved to dismiss the complaint because of plaintiff's failure to certify "its claim * * * in excess of $50,000.00, as required by * * * " section 6(c)(1) of the 1978 act, 41 U.S.C. § 605(c)(1) (Supp. V 1981).[1] In opposing the motion, plaintiff asserts that this action involves three separate and independent claims, each of which is for less than $50,000, and that certification is therefore not required.

For the reasons hereinafter appearing, it is concluded that plaintiff has presented to

---

1. " * * * For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." Plaintiff has admittedly not made such certification. The effect of a failure to certify, if required, is plain. *Skelly and Loy v. United States,* 231 Ct.Cl. ——, 685 F.2d 414 (1982).

the court, without having first certified it, one unitary claim (the "repair work" claim) for more than $50,000, and requiring certification, together with a separate and independent claim (the "as-built drawings" claim) for less than $50,000, and not requiring certification. *Warchol Constr. Co., Inc. v. United States,* 2 Cl.Ct. 384 (1983); *Fidelity and Deposit Co. of Maryland v. United States,* 2 Cl.Ct. 137 (1983); *B.D. Click Co., Inc.,* ASBCA No. 25609, 81–2 BCA (CCH) ¶ 15,394 (1981).

I

The facts necessary to disposition of the pending motion, as they appear from plaintiff's complaint and the exhibits attached to plaintiff's opposition to defendant's motion to dismiss, are as follows.

On August 20, 1979, defendant, acting through the Alaska District, Army Corps of Engineers, awarded to plaintiff a contract calling for the construction of a T-bar ski lift at the Black Rapids Training Site, Fort Greeley, Alaska, at a lump-sum price of $212,480. The contract contained a provision imposing upon plaintiff, for a period of a year following defendant's acceptance of the contract work, "warranty obligations." [2]

Plaintiff received notice to proceed September 21, 1979. By September 20, 1980, the contract work was "essentially complete." On October 16, 1980, defendant's resident contracting officer advised plaintiff that all "physical work is completed and recommended for acceptance," and reminded it that the contract "provides for a warranty of construction effective until 19 September 1981."

The contract required that plaintiff submit "as-built drawings" to defendant. Defendant withheld $4,500 of the contract price pending receipt of such drawings. The complaint alleges submission of the as-built drawings to defendant, wrongful rejection of them, resubmission of the drawings on three subsequent occasions, and a continued government refusal both to accept the drawings and to pay the balance of the contract price withheld in consequence of them.

While this controversy persisted, another, more serious, problem surfaced. In December 1980, plaintiff was informed that the T-bar ski lift was inoperative, and that under the contract warranty provision plaintiff was obligated to place "this facility back into operation immediately."

A blow-by-blow description of the prolonged and bitter dispute that ensued is not really necessary here. It is enough to say that plaintiff alleges that the contracting officer required plaintiff to perform both what plaintiff refers to as "non-warranty repair work" between December 17, 1980, and late October 1981, and certain repair and other work under a contract modification between May and September 1981.[3] The contract modification dealt with realignment and adjustment of the ski lift, but also included the as-built drawings referred to above, and an expanded operations and maintenance manual as well.[4]

For the "non-warranty repair work" plaintiff's administrative claim (as amended prior to the commencement of this action) was, and its present claim is, $41,944.03; for its other "repair work," plaintiff claimed administratively, and here claims, at least

---

**2.** The record contains neither the contract itself nor the warranty provision.

**3.** Defendant did not pay the sum stated in the contract modification because it deemed plaintiff's repair and other work unsatisfactory and insufficient to correct existing defects in the T-bar ski lift system. In the process, it issued to plaintiff an "Interim, Unsatisfactory Performance Rating" and threatened to issue an unsatisfactory final performance rating.

**4.** In terms of repair work, the contract modification called for replacement of any damaged parts and specifically included realignment of all sheave assemblies, inspection and repair of all towers, repair of the brake and installation of a new idler pulley on the engine, and installation of three new sheaves and 15 sheave liners. Plaintiff vigorously contended that this repair work was necessitated by the absence of competent and experienced government operators and maintenance men and misuse or abuse of the ski lift, and was not a "warranty condition."

$12,550.00. In short, the sums demanded for repair work exceeded, and exceed, $50,000.

In passing, it should be noted that, on September 28, 1981, plaintiff had submitted to defendant an invoice for $33,400, consisting of an amount allegedly "past due," plus a "partial billing" for extra work, and a separate request (absent payment) for a contracting officer's decision. The record also suggests that on February 1, 1982, plaintiff submitted to defendant a demand for a contracting officer's decision.[5] On March 17, 1982, defendant (which by that time had asserted a claim of more than $20,000 in reprocurement costs against plaintiff), advised it that since "the total amount in dispute exceeds $50,000.00," certification of plaintiff's claim was a prerequisite to its consideration by the contracting officer. *Cf. General Dynamics Corporation Electric Boat Division*, ASBCA No. 25919, 82–1 BCA (CCH) ¶ 15,616 (1982). In August 1982, prior to the filing of this suit, plaintiff increased its own monetary demands under the contract to a total of $58,994.03. Accordingly, whether or not defendant's March 17, 1982, advice was appropriate need not be, and is not, considered here.

## II

The Contract Disputes Act of 1978 recognizes that a single government contract may well give rise to two or more entirely separate claims, and provides that, in such a situation, the contractor may pursue its rights by filing "two or more [separate] suits," in either the same forum or in separate ones, as it may prefer. 41 U.S.C. § 609 (Supp. V 1981); *see, e.g., Dravo-Groves v. United States*, 231 Ct.Cl. —— (Order, July 16, 1982); *Warwick Construction, Inc. v. United States*, 225 Ct.Cl. 567, 650 F.2d 289 (1980); *E.D.S. Federal Corp. v. United States*, 1 Cl.Ct. 212 (1983).

■ The certification provision relied upon by defendant in this case appears in conjunction with Congressional reference to a "submitted claim * * * of more than $50,000," and requires the contractor to make certain specified certifications with respect to *"the* claim * * *."  Section 6(c)(1), 41 U.S.C. § 605(c)(1) (Supp. V 1981) (emphasis supplied). The words of the statute, the setting in which they appear, and the decisions interpreting and applying them make it plain that not every group of claims having an aggregate value of more than $50,000 need be certified to be a valid "claim" under section 6(c)(1). Where multiple claims, each of which is for less than $50,000, exist, the claims must be carefully examined to determine whether they are separate and individual claims not requiring certification, or merely portions of a single, unified, "claim" which, to be a valid claim, must be certified if amounting to more than $50,000 in the aggregate. *Warchol Constr. Co., Inc. v. United States, supra,* 2 Cl.Ct. at 389; *B.D. Click Co., Inc., supra,* 81–2 BCA (CCH) at 76,263–64.

■ Where there are *several* "claims," together aggregating more than $50,000, certification need be made only if those "claims" in fact "are so related to one another that they form parts of a whole * *." *Warchol Constr. Co., Inc. v. United States, supra,* 2 Cl.Ct. at 389. Where there is a close and significant relationship between ostensibly separate claims, it is appropriate "that they be considered a unified claim for certification purposes." *Id.; see* also *Fidelity and Deposit Co. of Maryland v. United States, supra,* holding that fragmentation of what was essentially a single demand exceeding $50,000 into multiple claims, each of which was for less than that amount, could not obliterate the necessity for certification as a prerequisite to the exercise of this court's jurisdiction.[6]

---

5. If so, however, that demand is not now before the court.

6. In *Fidelity,* the court perceived "basically *one* monetary demand arising out of the interrelated conduct and services provided by the con-

tractor under a single contract." *Id.,* 2 Cl.Ct. at 145–46. In *Warchol,* the purportedly separate claims were held to be "grounded in the same set of facts, or closely connected facts," and to have such a "close relationship" as to require

In determining whether separately stated claims are to be deemed unitary for certification purposes, neither the language employed by the contractor in making them, nor how they are organized, governs. What is vital is whether the demands arose out of essentially interrelated conduct and services, and the same or closely connected facts. Where these factors coincide, the demands can properly be viewed as a single, unitary claim requiring certification if in the aggregate amounting to more than $50,000. When the facts of this case are measured against that criterion, the proper treatment of plaintiff's three separately stated claims, for section 6(c)(1) purposes, becomes readily apparent.

Two of the three claims here asserted arose from essentially interrelated conduct and services, and involve essentially the same set of operative facts. All of the work assertedly done on the ski lift, whether labeled non-warranty repair work or work under the contract modification, came about because of an inoperative ski lift requiring (in defendant's view) repair, and defendant's insistence that plaintiff make it operational under the contract warranty clause.

While plaintiff's complaint divides its requests for relief for such work into two separate claims, they are in fact so interrelated that separating them serves only to confuse if not mislead. These repair work claims can be understood and disposed of properly only if considered together, and as one. Accordingly, the repair work "claims" for monetary relief in actuality constituted only a single, unitary, "claim," for an amount in excess of $50,000.

Certification of a claim for more than $50,000 is a jurisdictional prerequisite to bringing a direct access suit on that claim in this court. *Skelly and Loy v. United States,* 231 Ct.Cl. ——, ——, 685 F.2d 414, 417 (1982); *W.H. Moseley Co. v. United States,* 230 Ct.Cl. ——, ——, 677 F.2d 850, 852, *cert. denied,* 459 U.S. ——, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Paul E. Lehman,*

*Inc. v. United States,* 230 Ct.Cl. ——, ——, 673 F.2d 352, 355 (1982). Because plaintiff's claim for repair work is a unitary, uncertified, demand for more than $50,000, it "is not a valid claim and cannot be entertained by this court * * *." *Skelly and Loy v. United States, supra,* 231 Ct.Cl. at ——, 685 F.2d at 416. Defendant's motion to dismiss is granted as to this claim. *Id.*

A different result obtains, however, with respect to the "as-built drawings" claim for $4,500. The operative facts surrounding that claim do not have any real relationship to those involved in the repair work claim. Defendant has suggested no reason, nor is one perceived, for not treating it as a distinct and independent claim not requiring any certification. Accordingly, defendant's motion to dismiss is, as to the as-built drawings claim, denied.

Dismissal of the repair work claim is without prejudice to pursuit by plaintiff of the course delineated in *Skelly and Loy v. United States, supra,* 231 Ct.Cl. ——, ——, 685 F.2d 414, 419 (1982) with respect to that claim. Absent prior settlement or other disposition of the as-built drawings claim, defendant shall answer or otherwise respond to that claim within thirty (30) days.

that the claims be considered a unified claim for certification purposes. *Id.,* 2 Cl.Ct. at 389.