ISLES ENGINEERING
& CONSTRUCTION,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–75C.

United States Claims Court.

May 13, 1992.

Judith Ward Mattox, Colorado Springs, Colo., for plaintiff.

Steven Gillingham, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, and David M. Cohen, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss. Defendant alleged that plaintiff failed to comply with the certification requirements of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) (CDA), and consequently plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

## FACTS

On September 30, 1986, the United States, acting through the Department of the Navy, awarded a firm-fixed price contract to plaintiff, Isles Engineering & Construction, Inc. (Isles), in the amount of $234,000.00. Isles was to unearth, repair, and rebury certain water mains, valves, and hydrants at Kingsville Naval Air Station, Kingsville, Texas. The Navy provided Isles with plans, supplied by the Navy's

contract architect-engineer, which purported to identify the location of the buried mains and valves. The Navy issued a Notice to Proceed on October 14, 1986, and all work was to be completed by February 12, 1987.

The project was delayed because certain pipes could not be found in the locations indicated on the contract drawings, while other pipes were found that were not shown on the drawings. Delays also arose because valves that were needed to cut-off water to certain pipes were not closed in a timely fashion. The contract was substantially completed on April 17, 1987.

Between March and May, 1987, Isles submitted forty-two requests for equitable adjustment totalling $64,063.57 for extra work associated with changes and delays it encountered in performance. Attempts to reach a negotiated settlement of the claims were unsuccessful. On August 14, 1987, the Navy issued unilateral modification P00003 for "unforseen conditions encountered while repairing water mains," which increased the contract price by $28,515.54, and increased the performance time by 17.3 days. On the same day, the Navy issued modification P00004 which increased the performance time by nineteen days due to weather delays. In the letter accompanying the modifications, the Navy stated that it would also consider further adjustment to the contract for late delivery of twenty-inch gate valves if plaintiff provided sufficient documentation for the delay. The Navy stated that if Isles "disagreed with [defendant] concerning any of the above items, [Isles] may request a final decision by the Contracting Officer following the procedures detailed in Contract Clause 35 (FAR 52.233–1 DISPUTES)."

On September 8, 1987, the Navy reminded plaintiff that the contract required Isles to submit as-built drawings. Defendant also stated that if plaintiff did not intend to submit the information on the tardy twenty-inch gate valves, plaintiff was liable for $2,800.00 in liquidated damages pursuant to the contract. The Navy's letter also stated that if plaintiff disagreed "with the [defendant's position] concerning any of the above items, you may request a final decision of the Contracting Officer...." By letter of September 11, 1987, Isles informed the Navy that it did not agree with the "total amounts indicated as increase to the contract," and that it would assert a "formal claim ... encompassing all aspects of the contract ... not later than 30 days from the date of this letter." Isles did not submit a claim within its self-imposed thirty-day deadline.

On March 16, 1988, Isles submitted a Request for Equitable Adjustment (REA) in which it sought $184,030.00 in proposed costs for improper assessment of liquidated damages, extended overhead due to delays to the construction schedule, and costs due to defective plans and differing site conditions. The REA was certified, as required for claims to the contracting officer under the CDA, but did not request a contracting officer's final decision. Instead, the letter requested a meeting within twenty days to discuss the matter, and possible settlement. The contracting officer denied the REA by letter of March 31, 1988, and also stated that because Isles had not forwarded the information requested about the gate valve delay, liquidated damages would accrue as a result. The contracting officer also agreed to release the retainage for the as-built drawings as soon as Isles submitted, and the Navy approved, the drawings. On May 9, 1988, Isles responded, stating that it "formally request[ed] a final decision by the Contracting Officer at the earliest possible date...." Isles again reiterated its desire to negotiate a solution to the dispute.

On January 25, 1989, the contracting officer issued a final decision under the CDA, denying Isle's REA and asserting a counterclaim for $10,302.00. The decision stated that $7,800.00 of the counterclaim would be satisfied with the amount of the contract retained to ensure performance. On January 23, 1990, Isles filed its complaint in this court, seeking $184,030.00, plus interest. On April 20, 1991, defendant counterclaimed for the $10,302.00 demanded by the contracting officer.

## 242

## DISCUSSION

For the purposes of a motion to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1), the court must accept as true any undisputed allegations of fact made by plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Where there are disputed facts relevant to the issue of jurisdiction, the court is required to decide those facts. *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed.Cir.1988). The burden is on plaintiff to establish jurisdiction. *Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986).

The government argued that Isles' REA and its letter of May 9, 1988 requesting a final decision of the contracting officer did not constitute a claim within the meaning of the CDA. Alternatively, the government argued that even if these documents did constitute a valid claim under the CDA, they lacked certification and therefore were defective. The court addresses each of these arguments in turn.

### The Adequacy of Plaintiff's Claim

■ The Contract Disputes Act states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1988). While the CDA does not explicitly enumerate the requirements for a valid claim under the Act, "a claim's sufficiency may properly be evaluated against regulations implementing the CDA, the language of the contract in dispute, and the facts of the case." *Dawco Constr., Inc. v. United States,* 930 F.2d 872, 877 (Fed.Cir.1991). *See also Paragon Energy Corp. v. United States,* 645 F.2d 966, 227 Ct.Cl. 176 (1981). The United States Court of Appeals for the Federal Circuit has determined that there is

> no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer ade-

quate notice of the basis and the amount of the claim.

*Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987). However, the Federal Circuit has also held that

> the FAR mandates that, *inter alia,* a claim must seek payment of a sum certain as to which a dispute exists at the time of submission.... A contractor and the government contracting agency must already be *in dispute* over the amount requested. Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute.

*Dawco Constr. Inc.,* 930 F.2d at 878 (citing *Mayfair Constr. Co. v. United States,* 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied,* 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988)).

In *Cubic Corp. v. United States,* 20 Cl. Ct. 610 (1990), the Claims Court devised a four prong test to determine whether a claim is valid under the CDA. The purported claim must be (1) an actual claim; (2) in writing; (3) sent to the contracting officer; and (4) a request for a final decision. *Cubic Corp.* at 616.

■ Under the analyses of *Cubic Corp.* and *Dawco,* the court concludes that the REA of March 16, 1988, in conjunction with Isles' May 9, 1988 request for a final decision of the contracting officer, constituted a valid claim. After the break-down of the May 15, 1987, negotiations, the parties had a *bona fide* dispute over the forty-two items of work that Isles claimed were beyond the scope of the contract. The REA reflected a dispute ripe for the purposes of the CDA, and was clearly not a conventional request for payment. The REA pointedly rebutted unilateral modifications P00003 and P00004, and listed the individuals who were present at the failed negotiations of May 15, 1987. In view of this long-simmering disagreement over changes and delays, the court is convinced that the REA was plaintiff's response to a disputed claim, and

not merely a request for payment disconnected from the failed negotiations.

Although the REA was certified and it satisfied the first three elements of the *Cubic* test, it did not request a final decision of the contracting officer. Isles' correspondence of May 9, 1988, however, clearly requested a final decision, and thus satisfied the fourth prong of *Cubic Corp.* The request for the contracting officer's decision was clear and unequivocal, and the accompanying REA gave the contracting officer adequate notice of the basis and amount of claim. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586 (Fed.Cir.1987); *Mendenhall v. United States,* 20 Cl.Ct. 78 (1990). The request for the contracting officer's final decision, together with the certified REA, demonstrate to the court's satisfaction that Isles met its burden under the CDA.

The fact that plaintiff's May 9, 1988 letter also suggested the possibility, or hope, for a negotiated solution to the dispute did not detract from its validity of perfecting plaintiff's claim under the CDA. Plaintiff in *Contract Cleaning Maintenance, Inc.* "frequently expressed the hope that the dispute could be settled and suggested meeting to accomplish that result" through a series of letters to defendant. *Contract Cleaning Maintenance, Inc.* 811 F.2d at 592. The court in that case found that an expressed desire to negotiate a solution to the dispute did "not mean that those letters did not constitute 'claims'." *Id.* In its May 9, 1988 request for a final decision of the contracting officer, plaintiff stated that it would be "happy to sit down at the earliest possible date to negotiate a fair adjustment to the contract based upon the ... data presented with our claim of March 16, 1988." Defendant argued that plaintiff's eleventh-hour appeal for negotiations vitiated the claim for CDA purposes. Defendant's contention is incorrect because the letter unambiguously sought a final decision of the contracting officer and because the letter was written after a long and fractious dispute between the parties. Negotiations had taken place, and broken down, long before plaintiff's May 9, 1988 letter, and no other negotiations occurred after May 15, 1987. As noted above, a request for a final decision of the contracting officer need not be hermetically sealed from words such as "negotiate" or "settle."

*Certification*

The CDA also states in relevant part: (c)(1) For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605 (1988).

The intent of CDA certification is to discourage submission of spurious and inflated contractor claims and to encourage settlement of disputes. *See Paul E. Lehman, Inc. v. United States,* 673 F.2d 352, 354–55, 230 Ct.Cl. 11 (1982). Certification of a claim over $50,000 is not only a statutory requirement, it is a jurisdictional prerequisite for review of a contracting officer's decision before this court. Our predecessor court, the United States Court of Claims, repeatedly held that a claim of more than $50,000 "cannot be considered under the statute" unless it was "properly certified" when it was submitted to the contracting officer. *Paul E. Lehman, Inc.,* 673 F.2d at 355. *See also Skelly & Loy v. United States,* 685 F.2d 414, 231 Ct.Cl. 370 (1982); *Troup Bros. v. United States,* 231 Ct.Cl. 707 (1982); *W.H. Moseley Co. v. United States,* 677 F.2d 850, 230 Ct.Cl. 405, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). "[T]he failure to certify the claim submitted to the contracting officer should taint every 'decision' that follows." *Skelly & Loy,* 685 F.2d at 419, 231 Ct.Cl. 370.

The Court of Appeals for the Federal Circuit has endorsed the jurisdictional nature of the certification requirement in 41 U.S.C. § 605 (1988), as well.

[C]ertification is not a mere technicality to be disregarded at the whim of the contractor, but is an unequivocal prereq-

uisite for a post-CDA claim being considered under the statute. The CDA 'requires that to be valid a claim must be properly certified.' Unless that requirement is met, there is simply no claim on which a contracting officer can issue a decision. The submission of an uncertified claim, for purposes of the CDA, is, in effect, a legal nullity....

*Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1384 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983) (citations omitted). See also *Essex Electro Engineers, Inc. v. United States*, 702 F.2d 998 (Fed.Cir.1983); *W.M. Schlosser, Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983).

While mindful of Congress' intent in requiring certification under the CDA, the Court of Appeals for the Federal Circuit has not been slavish in its interpretation of the certification requirement. In *United States v. General Electric Corp.*, 727 F.2d 1567 (Fed.Cir.1984), the court permitted a contractor to cure a defective certification by reference to accompanying documents. The court in *General Electric* eschewed rigid formalities, finding that the documents accompanying the formal certification language satisfied the contractor's burden under the CDA.

■ In the case at bar, the REA was properly certified, but the letter of May 9, 1988 requesting the contracting officer's final decision was not. Yet the Navy's March 31, 1988 response to Isle's REA stated that Isles

may request a decision of the Contracting Officer pursuant to the provision of the disputes clause of your contract. Such requests should be forwarded via this office. You may submit additional information and *you may request that the previous correspondence concerning this matter be forwarded to the Contracting Officer for further review and determination.* This letter is not a Final Decision of the Contracting Officer.

(Emphasis added.)

In its May 9, 1988 request for a final decision of the contracting officer, Isles

followed the government's recommendation. Mr. Daniel Alexander, Isle's President, requested the Resident Officer in Charge of Production to "forward all previous correspondence to the Contracting Officer for further review and final determination." Based on *General Electric*, Isle's prior certification cannot be unsatisfactory, for such a finding would only run afoul of precedent, and frustrate the efficient prosecution of justice without furthering Congress' intent under the CDA. The court finds that Isles' certification of its REA effected Congress' intent to deter unscrupulous claims against the government.

## CONCLUSION

Based on the foregoing, the court denies defendant's motion to dismiss for lack of subject matter jurisdiction. All Appendix G materials are to be filed with the Clerk of the court no later than May 15, 1992, and a pre-trial conference will be held May 28, 1992 at 2 p.m., by telephone.

IT IS SO ORDERED.