**WITHERINGTON CONSTRUCTION CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–124C.**

United States Court of Federal Claims.

Oct. 20, 1999.

---

Andrew J. Kilpatrick, Jr., Jackson, MS, attorney of record for plaintiff.

Kenneth S. Kessler, Washington, DC, Department of Justice, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

ALLEGRA, Judge.

This government contract suit is before the court on the defendant's motion to dismiss the monetary portions of Count 1 of the plaintiff's amended complaint due to an alleged failure to comply with the Contract Disputes Act (CDA), 41 U.S.C. § 701 et seq. After carefully reviewing the submissions of the parties, and following oral argument, the court GRANTS defendant's motion, dismissing, without prejudice, the monetary claims contained in Count 1 of the amended complaint.

## I. Facts

This case arises out of a contract between the Witherington Construction Company (Witherington) of Mobile, Alabama and the General Services Administration (GSA). As amended, plaintiff's complaint sets forth three counts: (i) the first count alleges that, on August 19, 1996, the contracting officer wrongfully terminated plaintiff's contract for default, giving rise to a number of monetary claims; (ii) the second count alleges that, on July 5, 1996, the contracting officer wrongly determined that plaintiff was not entitled to recover the cost associated with the removal of a plaster ceiling in an elevator lobby; and (iii) the third count challenges the contracting officer's decision of October 17, 1997,

asserting that the government is entitled to liquidated damages. The defendant's motion seeks to dismiss only the monetary claims contained in the first of these three counts, the underlying facts with respect to which are as follows:

On August 18, 1995, GSA awarded a contract to Witherington to renovate and alter the U.S. Post Office and Courthouse in Fort Smith, Arkansas. A series of disputes ensued between GSA and Witherington, culminating in an August 19, 1996, letter from the GSA terminating the contract for default. The letter was the "final decision" of the contracting officer (CO) regarding Witherington's failure to comply with the requirements of the contract. Without submitting a certified claim to the contracting officer for alleged monetary damages associated with the CO's termination of the contract, Witherington filed suit in this court on February 27, 1997, appealing the CO's termination for default and demanding monetary compensation for the government's allegedly improper termination.

On August 4, 1997, the GSA issued yet another "final decision," demanding $467,-041.13 in liquidated damages based on Witherington's alleged repudiation of the contract; this amount was later reduced, in yet another "final decision," to $437,041.13. On April 16, 1998, Witherington amended its complaint to appeal the CO's demand for liquidated damages. Defendant filed its answer on June 1, 1998.

Prior to a July 22, 1998 status conference, counsel for the government first raised the question whether this court had jurisdiction to entertain the monetary claims associated with Count 1 of plaintiff's suit. According to counsel, because the plaintiff had failed to submit a certified demand for payment of these sums to the contracting officer pursuant to 41 U.S.C. § 605(a) (1994), none of the myriad "final decisions" issued by the CO during the course of the parties' dispute were effective to satisfy the jurisdictional requirements of the CDA with respect to the mone-

tary claims. The parties then entered into a series of discussions regarding the manner in which this jurisdictional defect might be corrected. A letter submitted to this court by plaintiff on July 29, 1998, indicated that the parties had agreed to ask the court for a stay to provide the plaintiff with the opportunity to rectify its failure to submit a certified claim regarding these claims to the CO. The court issued the requested stay on August 5, 1998. On August 26, 1998, the plaintiff submitted a certified request for a final decision on the monetary claims of Count 1, which was issued by the CO on December 1, 1998.

On January 22, 1999, the government, despite having agreed to allow the CO to consider Witherington's claims, moved to dismiss the monetary portions of Count 1 of the amended complaint for lack of jurisdiction under RCFC 12(b)(1). The defendant alleges that the stay to which it assented was ineffective to cure the jurisdictional defect it identified. Rather, according to the defendant, once a lawsuit under the CDA is filed, a CO loses all authority to issue a final decision. As such, according to the defendant, this court does not have jurisdiction to entertain the monetary claims of Count 1.[1]

II. Discussion

 The CDA provides that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). A CDA action may be brought in the Court of Federal Claims only if (i) the contracting officer has issued a final decision on the contractor's claim, 41 U.S.C. § 605(b); or (ii) the contracting officer has failed to issue a final decision on the contractor's claim or to notify the contractor of the time within which a decision will be issued, and at least 60 days have passed since the date the claim was submitted, 41 U.S.C. § 605(c)(5). In the latter case, the claim is "deemed denied." *See Case Incorporated v. United States*, 88 F.3d 1004, 1008 (Fed.Cir.1996); *Sharman Co., Inc.*

---

1. Defendant acknowledges that this court has jurisdiction to consider the remainder of Count 1, which involves the propriety of the default termination. *See, e.g., Malone v. United States*,

849 F.2d 1441, 1443–44 (Fed.Cir.1988)(holding that a default termination need not be the subject of a contractor's claim to be appealable under the CDA).

*v. United States,* 2 F.3d 1564, 1569 (Fed.Cir. 1993), *overruled on other grounds, Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1578–79 & n. 10 (Fed.Cir.1995); *Ervin & Associates, Inc., et al. v. United States,* 44 Fed.Cl. 646, 652–53 (1999). Moreover, under these provisions, it is axiomatic that a contracting officer's decision that is invalid may not serve as a basis for a CDA action. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed.Cir.1991), *cert. denied,* 502 U.S. 919, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991); *W.H. Moseley Co., Inc. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, 851–52 (1982), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). Thus, to gain a jurisdictional foothold in this court, a plaintiff pursuing a contract claim must satisfy two fundamental jurisdictional requirements—it must submit a claim for money presently due and must obtain a "final decision" on the claim, either actual or deemed.

A. Has a "Final Decision" Been Rendered as to the Monetary Claims Contained in Count 1?

█ As to the claims for money damages contained in Count 1 of the plaintiff's complaint, the defendant argues that the December 1, 1998, determination made by the CO regarding the plaintiff's claims was not a "final decision" because it was rendered without authority and thus is ineffective. The basis for this contention is the rule that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation," thereby "divest[ing] the contracting officer of his authority to issue a final decision on the claim." *Sharman Co. v. United States,* 2 F.3d at 1571 (citations omitted). *Sharman* based this rule

on its reading of 28 U.S.C. §§ 516–20 (1994), which vest plenary authority in the Department of Justice to conduct litigation involving the United States. According to the defendant, these provisions of Chapter 28 not only deny the CO the power to issue final decisions of contract disputes, but also deny the Justice Department the power to voluntarily revest the CO with that authority. As such, defendant argues that a court cannot rectify a lack of subject matter jurisdiction due to a contractor's failure to comply with 41 U.S.C. § 605 by granting a stay of judicial proceedings while the contractor, with the Justice Department's acquiescence, certifies a claim and awaits a final decision or a "deemed denial" by the CO.

*Sharman* clearly holds that a contracting officer may not render a "final decision" on a claim following the initiation of litigation on that claim. Though application of this rule sometimes leads to inefficient results,[2] this court has, as it obliged to do under the doctrine of *stare decisis,* consistently applied this rule in cases where, as here, a CO's decision occurs during the pendency of litigation. *See, e.g., Aeronetics Division, AAR Brooks & Perkins Corp. v. United States,* 12 Cl.Ct. 132, 138 (1987)("plaintiff's retroactive filing of a properly certified claim after judicial proceedings have been instituted is ineffective under the [CDA] and will not cure an original failure to properly certify the claim"); *Prefab Products, Inc. v. United States,* 9 Cl.Ct. 786, 789 (1986)(holding that a plaintiff's retroactive filing of a certified claim is "ineffective under the Contract Disputes Act and [does] not cure the original failure to certify the claim at the proper time").[3] Moreover, this is not a situation,

**2.** See, for example, *Volmar Construction, Inc. v. United States,* 32 Fed.Cl. 746 (1995), criticizing the complexity of the CDA's claim requirements and stating that, although the Court of Federal Claims would:

 submit to torture rather than exercise jurisdiction over unwarranted subject matter [,] ... [s]urely [ ] Congress did not intend that such exhaustive effort would be expended merely to ascertain the court's power to proceed on claims.... The avowed congressional objective in enacting the CDA to foster administrative resolution of claims is a casualty of slavish adherence to a patchwork of statutory, regula-

tory, and decisional law that now guides the court.... [T]he CDA has become a jurisdictional maze [that] just make[s] the cost of contracting with the government higher.

*Id.* at 761. *See also Christian Appalachian Project, Inc. v. United States,* 10 Cl.Ct. 595, 597 (1986)(stating that dismissing a party's claim simply because a CO's final decision was rendered after a claim was in litigation "accomplish[es] nothing of substance[ ] and would cause the [party] unnecessary trouble and expense").

**3.** *See also Medina Construction Ltd. v. United States,* 43 Fed.Cl. 537, 553 (1999); *Cincinnati Elec. Corp. v. United States,* 32 Fed.Cl. 496, 501

such as was true in *Case v. United States, supra,* where the claim considered by the CO was somehow distinct from that which was pending in the litigation before this court.

*Sharman* and its progeny, however, do not address the question whether the Justice Department may revest authority in the contracting officer to consider a claim that is the subject of pending litigation. Given *Sharman's* construction of 28 U.S.C. §§ 516–19, resolution of this question seemingly turns on whether the Department may delegate its litigating authority under those provisions to the CO. Whether, from a theoretical standpoint, such a delegation may occur—and there is authority to the contrary [4]—is an issue that need not be resolved here as it appears that none the Department of Justice officials who authorized the CO in this case to issue a "final decision" had anything approaching the requisite settlement authority to perform such a delegation.[5] As such, the CO's decision rendered during the pendency of the instant case was clearly not valid.

Based upon the foregoing analysis, the final decision of the CO issued on December 1, 1998, regarding the monetary claims of Count 1 of the amended complaint was not a valid "final decision" under the CDA. As such, this court lacks jurisdiction over the monetary claims of Count 1, which, therefore, must be dismissed.[6]

B. Will a Future Action be Barred by the Statute of Limitations?

■ As discussed above, the CO's December 1, 1998, decision is insufficient to satisfy the jurisdictional requirements of 41 U.S.C. § 605(a). *A fortiori,* it is also insufficient to trigger the statute of limitations. Under the CDA, a plaintiff must file a suit in this court within 12 months of receiving a CO's final decision. 41 U.S.C. § 609(a)(3). In the absence of such a final decision, as in the case of a "deemed denial" under 41 U.S.C. § 605(c), a plaintiff is bound by the Tucker Act's general six-year statute of limitations

---

(1994); *Munford Inc. v. United States,* 30 Fed.Cl. 185, 190 (1993). *Cf. Durable Metal Products, Inc. v. United States,* 21 Cl.Ct. 41, 46 & n. 4 (1990)(noting that, under 41 U.S.C. § 605(c)(5), the court, through a stay and a remand, can revest authority in the CO to issue a final decision in "deemed denial" situations where the CO failed to issue a decision within the 60–day window provided by 41 U.S.C. § 605(a)).

4. In a 1980 opinion, the Office of Legal Counsel at the Justice Department concluded that the Attorney General may not delegate her authority under sections 516 and 519 to individuals outside the Department of Justice. *See* 4B Opinions of the Office of Legal Counsel 820 (1980). In reaching this conclusion, the Office of Legal Counsel reasoned:

In the absence of any general provision of law permitting an agency to transfer its statutory authority to another agency, such transfers or delegations may normally be accomplished only by legislation or by executive reorganization under the Reorganization Act. *See* 5 U.S.C. § 903(a). We have already concluded that the Reorganization Plan did not itself transfer litigating authority from the Department of Justice to [an outside agency] and we see nothing in the Plan which can be read as authorizing the Attorney General to delegate such authority. Nor do the statutes generally applicable to the Department of Justice empower the Attorney General to delegate authority to other agencies. Indeed, the implication of these statutes is clearly to the contrary.... The policy of ensuring centralization of litigation

which underlies §§ 516 and 519 is furthered by a rule prohibiting delegation outside the Department of Justice.

*Id.* at 823–24.

5. If the power to delegate litigating authority exists at all, it resides only in the Attorney General and, arguably, such other Department of Justice officials authorized to settle a claim of the dollar magnitude at issue (*e.g.,* the Assistant Attorney General). In the instant case, only the Justice Department line attorney assigned to this case (and perhaps his Assistant Branch Chief) appear to have acquiesced in the decision to refer the matter back to the CO. Since neither of these officials has the authority to settle a case of the dollar value at issue, they obviously do not have the legal ability to vest that settlement authority outside the Department. *See* 28 C.F.R., pt. 0, subpt. Y, app. (1998). Plaintiff has cited no regulation or Justice Department procedure to the contrary.

6. Plaintiff essentially argues that the defendant should be estopped from challenging jurisdiction because its counsel agreed to refer the relevant portions of Count 1 back to the CO. While the defendant's acquiescence undoubtedly misled the plaintiff and may have generated some additional costs, the fact remains that jurisdiction may not be established via estoppel. *See Synernet Corp. v. United States,* 41 Fed.Cl. 375, 383 (1998); *Clark v. United States,* 229 Ct.Cl. 570, 576 (1981); *General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 558 F.2d 985, 990 (1977).

found at 28 U.S.C. § 2501. *See, e.g., Malissa Co. v. United States*, 11 Cl.Ct. 389, 390–91 (1986); *Turner Construction Co. v. United States*, 9 Cl.Ct. 214, 215–16 (1985).

In *United Construction Co., Inc. v. United States*, this court held that a CO's final decision, based upon an uncertified claim, cannot begin the running of the statute of limitations because such a decision is a legal nullity: "If the 'claim' to the contracting officer is not certified, it has not been 'properly submitted,' so the contracting officer does not have authority to issue a decision." 7 Cl.Ct. 47, 51 (1984) (citations omitted). *See also Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1577–78 (Fed.Cir.1987); *H.H.O. Co. v. United States*, 12 Cl.Ct. 147, 159–60 (1987)(holding that a "final decision" not based upon a certified claim is a "nullity and the limitations provision of Section 609(a)(3) of the CDA is accordingly not activated"); *Skelly & Loy*, 231 Ct.Cl. 370, 685 F.2d 414, 419 (1982). As these decisions indicate, the 12–month statute of limitations will not be triggered until receipt of a valid final decision on the monetary claims that are currently the subject of Count 1.[7]

### III. Conclusion

The defendant's motion to dismiss, without prejudice, the monetary claims associated with Count 1 of the amended complaint is hereby GRANTED. Should, following a valid final decision or deemed denial, the plaintiff decide to refile these portions of Count 1 as a separate lawsuit in this court, the clerk shall assign that case to this judge. No filing fee shall be imposed on that filing. No costs.

---

[7] It is the intent of this court that this discussion of the statute of limitations be deemed the "law of the case" should plaintiff choose, following the receipt of a valid final decision or a deemed denial, to refile the monetary claims of Count 1 as a separate complaint. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–19, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). On this point, it should be noted that, at oral argument, defendant's counsel repeatedly indicated that, in any subsequently-filed lawsuit involving the monetary claims of Count 1, the defendant will not argue that any of the decisions rendered before and during the instant case were "final decisions" within the meaning of the statute of limitations.